## Altemose, et al. *v.* The Pennsylvania Higher Educational Facilities Authority, et al.

Argued January 9, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Clarke F. Hess*, with him *John C. Butera*, and *Butera & Detwiler*, for plaintiffs.

*Richard L. Kearns*, for defendant, Authority.

*Francis P. O'Hara*, with him *Paul W. Callahan* and *Fox, Differ, Mazer & Callahan*, for defendant, Northeastern Christian Junior College.

OPINION BY JUDGE MENCER, February 28, 1973:

This is an action in equity commenced on August 11, 1972 by J. Leon Altemose and Roger D. Altemose (plaintiffs) when they filed their complaint seeking a temporary and a permanent injunction to enjoin the Pennsylvania Higher Educational Facilities Authority and its Executive Director, W. Stuart Helm (defend-

ants), from awarding contracts for the construction of a student dormitory building at Northeastern Christian Junior College (College), 1860 Montgomery Avenue, Villanova, Montgomery County, Pennsylvania. Defendants filed an answer and new matter and plaintiffs replied to the new matter. Following a hearing on August 18, 1972, we refused to grant a preliminary injunction, and the issue of granting a permanent injunction is now before us.

The factual background which preceded this controversy began with the advertising for competitive bids, to be opened on August 3, 1972, for the construction of a student dormitory at the college. One of the unsuccessful bidders was Altemose Construction Company of Norristown, Pennsylvania. Plaintiffs are the President and Vice President of Altemose Construction Company, and Roger D. Altemose signed the bid proposal made by his company relative to the dormitory construction here in question. We have considered the pleadings and all of the testimony taken before us and make the following

## FINDINGS OF FACT

1. The plaintiffs, J. Leon Altemose and Roger D. Altemose, are individuals and reside at 3204 Nottingham Road, Norristown, Montgomery County, Pennsylvania, and Lywiski and Evansburg Roads, Collegeville, Montgomery County, Pennsylvania, respectively, and are taxpayers within the Commonwealth of Pennsylvania.

2. The defendant, Pennsylvania Higher Educational Facilities Authority, is a state authority created by the Pennsylvania Legislature by the Act of December 6, 1967, P. L. 678, 24 P.S. §5501, et seq., known as "The Pennsylvania Higher Educational Facilities Authority Act of 1967," and has its principal office at 101 South 25th Street, Kline Village, Harrisburg, Pennsyl-

vania, with a mailing address of P. O. Box 3161, Harrisburg, Pennsylvania.

3. The defendant, W. Stuart Helm, at the time of this action, was the Executive Director of the defendant authority and his address was the same as the defendant authority.

4. Pursuant to the aforementioned Act of the Legislature, the defendants promulgated and advertised a "Notice of Letting" of bids which were to be opened on Thursday, August 3, 1972, at 10:30 o'clock a.m., Eastern Daylight Saving Time, for the construction of a new girls' dormitory for Northeastern Christian Junior College, Montgomery County, Pennsylvania.

5. Pursuant to the "Notice of Letting," the defendants prepared specifications, including conditions of contract, for the construction of the dormitory building at the College. Paragraph 25(c) of the conditions of contract reads as follows: "The General Contractor shall, if necessary to provide proper protection of the property and construction, employ one or more watchmen to guard the premises at night and on Saturdays, Sundays, holidays or such other times workmen thereon do not cover such requirements. In the event the General Contractor has not provided such watchman services and if it is the judgment of another Contractor, or others connected with the Project that such services should be provided, they shall advise the Authority accordingly. Should the Authority concur, it will advise the General Contractor by letter that watchman services are necessary and he will be required to supply such services immediately at no additional cost to the Authority."

6. Sealed proposals were received by the defendant authority at the time and place mentioned in the "Notice of Letting."

7. Altemose Construction Company, of Norristown, Pennsylvania, was one of the unsuccessful bidders rela-

tive to the construction of the student dormitory at the College.

8. Plaintiff, J. Leon Altemose, is President of Altemose Construction Company.

9. Plaintiff, Roger D. Altemose, is Vice President of Altemose Construction Company.

10. Altemose Construction Company has submitted bids in response to other projections in which the conditions of contract contained the identical provision of Paragraph 25(c).

11. Altemose Construction Company has written on several occasions concerning the condition of contract here identified as Paragraph 25(c) and has sought clarification of its provisions and has offered suggestions designed to improve its provisions.

12. Altemose Construction Company has experienced union problems at other construction site locations which increased the likelihood that they would need one or more watchmen in connection with the project that is the subject of this lawsuit.

## DISCUSSION

The defendants make a threshold attack by challenging the plaintiffs' standing to sue and would portray them as only disappointed bidders. Although this argument has some persuasiveness to it, we conclude that the plaintiffs in their *taxpayer status* may seek to enjoin the awarding of the contract, in this case, under the reasoning of *Price v. Philadelphia Parking Authority,* 422 Pa. 317, 221 A. 2d 138 (1966). We believe that here the plaintiffs commenced this action as taxpayers and not as disappointed bidders and therefore have standing for this suit, as did the plaintiff in *Heilig Bros. Co., Inc. v. Kohler,* 366 Pa. 72, 76 A. 2d 613 (1950).

We are then confronted with the key question, which is whether the specification here challenged is too vague

and uncertain to provide a common standard for bidders. A common standard requires previously prepared specifications, freely accessible to all competitors. *Page v. King,* 285 Pa. 153, 131 A. 707 (1926). Although we believe that the suggestions made by the Altemose Construction Company would be practical and perhaps better than the condition of contract under attack here, we are unable to conclude that the specifications offered to the bidding public in this case were not compatible with the principle of open, fair, and uniform competitive bidding. *Compare Steppacher v. Bradley,* 73 Dauph. 373 (1959).

The testimony established that the condition here under attack by the plaintiffs was a common one and regularly used in public contracts in the construction field. All persons interested in bidding were confronted with the same provision and therefore all had the same fair opportunity to bid in free competition with each other. Nothing in the condition suggests partiality nor does it unreasonably restrict an intelligent bid by interested persons.

Plaintiffs emphasize that a bidder with unhappy and unfortunate labor trouble such as that experienced by Altemose Construction Company would be at a disadvantage in bidding, compared with one who would have no reason to anticipate future job site disturbances. The existence of such a situation might well point up the validity and significance of the provision and its potential requirements relative to providing watchmen, rather than evidence unfairness. Each and every bidder is presented the same task of considering and evaluating the variables of site location, as it pertains to security, future weather conditions, changes in prices for material, overtime, and job overruns, as they interrelate in arriving at the single total bid to be made on a given job.

The plaintiffs have concluded, based on their company's past unhappy labor troubles, that it will be necessary for it to provide protection of the property and construction at any given site, whereas it would not likely be necessary for other bidders, without a similar labor dispute experience, to do so. Their conclusion is very likely a correct one. However, the crucial point which they overlook is that the resulting disadvantage is not due to the specifications or conditions of contract *binding upon all bidders,* but due solely to their past association and difficulties with labor unions. We must conclude that the legal remedy available to the plaintiffs' company is not in altering the reasonable bidding specifications of public construction projects, but lies in the power of the courts to limit labor protests and enjoin unlawful acts of violence. *See Altemose Construction Company v. Building and Construction Trades Council of Philadelphia,* 449 Pa. 194, 296 A. 2d 504 (1972).

## CONCLUSIONS OF LAW

1. This action is properly brought in equity, and this Court has jurisdiction of the subject matter, as well as all parties to the action.

2. Plaintiffs have failed to sustain the burden of showing that the defendants have violated the law or abused their discretion in the promulgation of the bid specifications relative to the construction of a student dormitory at Northeastern Christian Junior College, Villanova, Pennsylvania.

3. Paragraph 25(c) of the condition of contract which was part of the specifications making up the Invitation-Bid Proposal furnished a common standard of bidding, understandable and readily applicable to all bidders.

4. Plaintiffs' equity suit should be dismissed.

### Decree Nisi

And Now, February 28, 1973, the plaintiffs' complaint in equity is dismissed, at the cost of the plaintiffs. The Prothonotary shall enter this Decree Nisi and notify the parties, or their counsel, forthwith. If no exceptions hereto are filed within twenty (20) days after the notice of filing hereof, this Decree Nisi shall be entered by the Prothonotary as a final decree.