**David D. SHAEFFER, Appellant,**

v.

**The CITY OF LANCASTER.**

Commonwealth Court of Pennsylvania.

Argued April 13, 2000.

Decided May 19, 2000.

Paul A. Logan, King of Prussia, for appellant.

Robert M. Frankhouser, Jr., Lancaster, for appellee.

Before SMITH, J., KELLEY, J., and McCLOSKEY, Senior Judge.

SMITH, Judge.

David D. Shaeffer appeals from an order of the Lancaster County Court of Common Pleas that denied his request for a preliminary injunction to enjoin the City of Lancaster (City) from awarding a publicly bidded construction contract to Johnston Construction Company (Johnston) for the removal and replacement of one water and one service pump and their respective valves (Project) at the Conestoga Water Treatment Plant (Plant). The question presented by Shaeffer is whether the trial court erred in failing to grant Shaeffer's request for a preliminary injunction to enjoin the City from awarding a public contract to a contractor who deviated from the bid documents and in failing to grant an injunction when there was no showing of irreparable harm as the difference between the lowest bidders was marginal.

## I

In April 1999 the City solicited bids for the Project. Each bidder was required to submit a base bid for the Project (Base Bid) and an alternate bid for the removal and replacement of two additional pumps (Alternate Bid), a project that the City was considering if funding was available. Each bidder received contract specifications (Specifications) that delineated the types of products and construction methods to be used for the Project. The Specifications permitted a bidder to propose a substitution to the specified products and methods, so long as the substitution met certain conditions. The Specifications also gave the City the right to salvage the valves replaced under the Project. Section 02055 of the Specifications provided that the contractor must "[r]emove and store valves claimed as salvage by Owner at a location designated by Owner." The purpose of this provision was to give the City the option to use the valves subject to the Base Bid as spare parts for the second pair of pumps, if those pumps were not replaced.

B.K. Engineers and Constructors (BKEC) and Johnston submitted Base and Alternate Bids for the Project. BKEC submitted a Base Bid of $424,000 and a Base plus Alternate Bid (Total Bid) of $684,563. Johnston submitted a Base Bid of $448,609 and a Total Bid of $684,566. Johnston's bids contained a form entitled "Substituted Items" in which it differentiated its Base and Alternate Bids based upon whether the City exercised its right to salvage the replaced valves. If the City elected to waive its right to salvage the valves, Johnston's "contract credit" would reduce its Total Bid by $1,200, thus making it lower than BKEC's bid by $1,197. If the City elected to exercise its salvage right, BKEC's Total Bid would be $3 lower than Johnston's bid. Upon learning of the

proposed substitution, BKEC protested to the City, but it nevertheless concluded that the substitution was permitted under the Specifications. With its credit, Johnston became the lowest bidder, and the City issued a notice of intent to award the contract to Johnston.[1]

On August 19, 1999 BKEC and Shaeffer, a City taxpayer, filed a complaint in the Court of Common Pleas seeking a preliminary injunction to preclude the City from awarding the contract to Johnston. After a hearing, the trial court dismissed BKEC as a party for lack of standing and denied Shaeffer's request for the injunction. The court determined that Shaeffer did not demonstrate a clear right to relief because the court was unable to conclude that the proposed substitution was in clear violation of the Specifications. The court noted that, although the Specifications did not specifically require bidders to bid alternatively, they also did not expressly preclude such bidding. The court stated that BKEC could have provided a similar credit if it so desired and that there was arguable merit to the City's assertion that acceptance of the credit, even if irregular, was a "waivable informality."

█ The trial court also concluded that Shaeffer failed to prove irreparable harm. The court stated that, although violation of competitive bidding requirements may constitute irreparable harm and undermine the integrity of the bidding process, such was not the case here because there was no suggestion of collusion, favoritism, fraud or corruption. The court found that greater harm would result if the injunction were granted and that further legal proceedings or a rebid could delay the Project several months, during which time another pump failure could occur. Further, Shaeffer's actual harm would be a "de minimis"

1. In May 1999 two of the pumps at the Plant failed, and the City's water delivery system was impaired. The City was required to rent a diesel pump at a cost of $12,500 per month

to enable the Plant to function at 50 percent of its normal capacity. As a result of the failure, the City decided to replace all four pumps as soon as possible, and, as a conse-

$3. The court also found that another pump failure would result in reduced availability of treated water for drinking and general use, reduced availability of water for fire protection and reduced revenue to the City from the sale of water to its customers.[2]

## II

Shaeffer first argues that he demonstrated a clear right to relief because the use of a contract credit as a substituted construction method was an unlawful deviation from the bidding requirements and gave Johnston an improper competitive advantage. He relies on *Conduit and Foundation Corp. v. City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979), in which the Court affirmed the grant of an injunction after determining that the lowest bidder was afforded a competitive advantage in submitting its bid which destroyed the competitive process. The City, on the other hand, argues that the contract credit was permitted as a substituted construction method and that, even if it was not, the City was entitled to accept it as a "waivable informality."

■ A contract award in a competitive bidding process must be overturned if mandatory requirements in bid instructions are not strictly followed. *See Kimmel v. Lower Paxton Township*, 159 Pa. Cmwlth. 475, 633 A.2d 1271 (1993); *Karp v. Redevelopment Authority of City of Philadelphia*, 129 Pa.Cmwlth. 619, 566 A.2d 649 (1989). Section 01630 of the Specifications provides, in relevant part: "Items of equipment and/or materials made by manufacturers other than those specified and which Bidder feels are 'equal' to specified items may be offered as substitutes to specified items." Section 01630 also provides that a bidder proposing a substituted construction method must sup-

ply a detailed description of the proposed method; drawings illustrating the method; the name and address of similar projects on which the method was used; the date of use; and the name of the engineer.

■ Based upon a reasonable interpretation of Section 01630 of the Specifications, the Court concludes that Johnston's contract credit would not be permitted as a construction method. The information that must accompany a construction method substitution—drawings, use in past projects and the name of the engineer—suggests that the construction method is exactly that, a method or process of construction, and not a discount based on the waiver of a contractual right. The City cites no controlling case authority for its assertion that a contract credit represents a construction method, and none of the other bidders interpreted the Specifications as permitting the use of a contract credit in this manner. The City, nevertheless, argues that the contract credit was permitted because the City was entitled to accept it as a "waivable informality." The City asserts that it could waive the substitution because Section I of the Specifications provides that "[t]he unqualified right is reserved by the Owner to waive any informalities in, or reject any or all proposals, as may be deemed to be in the best interest of the Owner."

■ The case law is well settled that a public owner has no discretion to waive defects in the bidding process if the result would violate applicable statutory or city ordinance competitive bidding requirements. *Conduit*; *Rainey v. Borough of Derry*, 163 Pa.Cmwlth. 606, 641 A.2d 698 (1994). In *Conduit* the Court held that a city could not waive a bidder's listing of alternative suppliers under a clause in the bid documents that permitted the discretionary waiver of bidding irregularities.

---

quence, waived its right to salvage the replaced valves.

**2.** On appeal from a grant or denial of a preliminary injunction, the Court's review is limited to determining whether there were any

apparently reasonable grounds to support the trial court's decision or whether the rule of law relied upon was erroneous or misapplied. *Concerned Citizens for Better Schools v. Brownsville Area School District*, 660 A.2d 668 (Pa.Cmwlth.1995).

The Court determined that, although the bid instructions did not expressly forbid the listing of alternative suppliers, the irregularity was prohibited because it permitted the bidder the "opportunity" for a competitive advantage in preparing the bid. The Court concluded that permitting this advantage violated statutory requirements for competitive bidding which exist to invite competition and to guard against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts.

Here, Johnston became the lowest bidder only after the City considered the $1,200 contract credit; thus Johnston was provided with an impermissible competitive advantage over the other bidders. Under *Conduit* Johnston's credit represented an unlawful deviation from the Specifications, and it therefore was not an "informality" that the City could waive. The City, however, argues that *Conduit* is distinguishable because there the Court found the irregularity to be non-waivable as it resulted in the "appearance of impropriety." The City argues that here there was no suggestion that the award to Johnston was "the product of favoritism, fraud or corruption of any kind." Although the City is correct that there was no allegation of fraud or corruption, there is little doubt that favoritism would result if the City were to waive Johnston's violation of the bid requirements and allow it an express competitive advantage over other bidders.

■ The trial court concluded that Johnston had no competitive advantage other than its own resourcefulness in recognizing the needs of the City and that BKEC could have done the same thing if it too had been perceptive. However resourceful Johnston may have been, fairness lies at the heart of the bidding process, and all bidders must be confronted with the same requirements and be given the same fair opportunity to bid in free competition with each other. *See Altemose v. Pennsylvania Higher Educational Facilities Authority*, 7 Pa.Cmwlth. 596,

300 A.2d 827 (1973). Only if the Specifications permitted the use of contract credits would the bidding have been fair and on a common basis.

III

■ Shaeffer next argues that the trial court erred in concluding that he failed to show irreparable harm. Shaeffer cites *Conduit* for the proposition that the violation of competitive bidding requirements constitutes irreparable harm justifying the issuance of an injunction. The Court agrees. Statutory violations are sufficiently injurious to constitute irreparable harm, *Pennsylvania Public Utility Commission v. Israel*, 356 Pa. 400, 52 A.2d 317 (1947), and a preliminary injunction may be upheld based upon the violation of competitive bidding requirements, *Conduit; Karp.* The irreparable harm requirement was satisfied because Johnston's bid contained an unlawful deviation from the Specifications and violated competitive bidding requirements.

The City argues that even if BKEC were the lowest bidder, the City had discretion to award the contract not to the lowest bidder, but to the "lowest responsible bidder," i.e., the one best able to perform the contract. *See Kratz v. Allentown*, 304 Pa. 51, 155 A. 116 (1931); *A. Pickett Construction, Inc. v. Luzerne County Convention Center Authority*, 738 A.2d 20 (Pa.Cmwlth.1999). The City further argues that it could accept Johnston's bid over that of BKEC because the City was not required by statute to solicit bids for the Project. *See* Section 1902 of The Third Class City Code, Act of June 23, 1931, P.L. 932, *as amended*, 53 P.S. § 36901(d) (contracts for a sum greater than $10,000 and involving the maintenance, repair or replacement of water facilities do not require advertising or bidding). The Court rejects both arguments.

■ The Court in *Kratz* held that a municipality may, in determining the lowest responsible bidder, consider factors

other than bid price, including financial responsibility, integrity, efficiency, industry, experience, promptness and ability to carry out the project. The City fails to explain how Johnston was the lowest responsible bidder, and the Court rejects the implication that the impermissible use of a contract credit made it so. Moreover, the Court notes that, in the absence of a statutory requirement, a contract must be awarded to the lowest responsible bidder when a public authority elects to use the public bidding process. *See American Totalisator Co., Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980); *Statewide Building Maintenance, Inc. v. Pennsylvania Convention Center Authority,* 160 Pa. Cmwlth. 544, 635 A.2d 691 (1993). Because the City publicly solicited bids for the Project, it was bound by competitive bidding requirements to award the contract to the lowest responsible bidder.

### IV

■ Lastly, Shaeffer argues that denying the injunction would result in the sanctioning of an illegal award and that this harm outweighs the potential harm cited by the trial court: risk of future pump failure due to the possibility of delay caused by additional legal proceedings or a rebid. Shaeffer cites *Karp* for the proposition that a court must enjoin an award once it determines that mandatory bid requirements were violated. Here, Johnston's use of a contract credit violated the bid requirements and provided Johnston with an unlawful competitive advantage. As for the harm cited by the trial court, the Court notes that further legal proceedings are a possibility in most cases, and that the City is not obligated to conduct a rebid, but it may instead award the contract to BKEC as the lowest responsible bidder. Additionally, the trial court found that when two of the Plant's pumps failed in May 1999, the City maintained its water distribution system by renting a diesel pump.

The Court concludes that because there were no reasonable grounds for the trial court's decision and because it was based upon an erroneous interpretation of the law, the trial court's order must be reversed. This case is remanded to the court to enter a preliminary injunction enjoining the City from awarding the contract to Johnston and to impose any necessary bond requirements pending a final resolution of the matter.

### *O R D E R*

AND NOW, this 19th day of May, 2000, the order of the Lancaster County Court of Common Pleas is reversed, and this case is remanded for the entry of a preliminary injunction and the imposition of any necessary bond requirement pending final disposition consistent with the foregoing opinion.

Jurisdiction is relinquished.