**FEDORKO PROPERTIES, INC.**

v.

**MILLCREEK TOWNSHIP SCHOOL DISTRICT, a/k/a School District of the Township of Millcreek and Westminster Place Partnership.**

**Westminster Place Partnership, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2000.
Decided July 13, 2000.

Eric J. Purchase, Erie, for appellant.

Kevin L. Colosimo, Erie, for appellee, Fedorko Properties, Inc.

Before SMITH, J., FLAHERTY, J., and McCLOSKEY, Senior Judge.

McCLOSKEY, Senior Judge.

Westminster Place Partnership (Westminster) appeals from an order of the Court of Common Pleas of Erie County (trial court), denying its motion for summary judgment, denying the motion for summary judgment filed on behalf of Millcreek Township School District (the District) and granting the motion for summary judgment filed on behalf of Fedorko Properties, Inc. (Fedorko). We affirm.

The facts of this case are not in dispute. In or around June of 1998, the District closed and abandoned one if its elementary school facilities known as Tracy Elementary School located on the northwest corner of the intersection of west 12 th street and Peninsula Drive in Millcreek Township, Erie, Pennsylvania (hereinafter referred to as the property). By resolution dated June 15, 1998, the District authorized the sale of the property by sealed bid and directed its administration to solicit proposals for the same.[1] The resolution provided for certain terms and conditions re-

garding the sale of the property, including the following:

(b) The property shall be sold in 'AS IS' condition;

. . .

(d) A formal purchase contract must be executed within fifteen (15) days following the selection of a purchaser. The terms of the purchase contract shall provide that the School District shall receive a hand payment of no less than $100,000, the balance of the purchase price at closing, all transfer taxes to be paid by the purchaser, closing to be held on or before November 1, 1998, time being of the essence. . . .

. . .

(f) All bids shall be received no later than September 1, 1998, at 1:30 p.m. and bids shall be opened on September 1, 1998 at 7:00 p.m.

(R.R. at 17a).

Pursuant to the resolution, the District's administration published a notice to bidders and advertisement of sale of the property, as well as instructions to bidders. The notice and instructions required, in pertinent part, that prospective buyers accept the property in "AS IS" condition. (R.R. at 23a). The notice and instructions further provided that the District "makes no representations as to the size of the property or the marketability of title, general conditions and terrain or any other matters affecting the property." *Id.* However, neither said notice nor instructions referenced a closing date as provided in the resolution.

On September 1, 1998, the District opened proposals from seven different parties. Westminster submitted the bid proposal with the highest purchase price, $1,751,000.00. However, Westminster's bid was premised upon the happening of numerous contingencies, including the abil-

---

1. This method of sale is authorized by Section 707 of the Public School Code of 1949 (Code), Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. § 7–707.

ity of Westminster to secure necessary approvals/permits relating to the development of the property[2] and the sufficiency and adequacy of various utilities at the property line.[3] These contingencies are found in paragraph J of Westminster's bid.[4] Fedorko submitted the bid proposal with the second highest purchase price, $1,188,888.88. On September 21, 1998, the District awarded the sale of the property to Westminster. Fedorko then filed a writ of summons in equity against the District and indexed the same as a lis pendens action against the property.

Nevertheless, on October 1, 1998, the District and Westminster signed an agreement for the sale of the property. The agreement was a form agreement prepared by the District and included various representations and warranties regarding the character and quality of the District's title to the property, as well as environmental conditions affecting the property. These representations and warranties were inconsistent with both Westminster's bid proposal and the provisions of the resolution, notice and instructions to bidders requiring the property to be sold "AS IS." On October 22, 1998, Fedorko filed a complaint in equity against the District, asking the trial court to set aside the District's acceptance of Westminster's bid as improper and unlawful. More specifically, Fedorko alleged that Westminster's bid failed to conform to the terms and specifications set forth in the resolution and notice to bidders, i.e., requiring the "AS IS" sale of the property.[5] Additionally, Fedorko alleged that Westminster's closing date

was inconsistent with the resolution's closing date of November 1, 1998.[6]

The District filed an answer to Fedorko's complaint, essentially denying the material allegations of the same. Instead, the District contended that the term "AS IS" related to the physical condition of the property, that the terms and conditions of sale provided for in the resolution, notice and instructions to bidders did not prohibit the contingencies expressed in Westminster's bid and that Westminster's bid conformed to these terms and conditions. The trial court then granted Westminster permission to intervene in this matter and Westminster also filed an answer as an intervening defendant. Westminster's answer essentially reiterated the contentions of the District's answer. All parties subsequently filed motions for summary judgment and argument was conducted before the trial court.

Ultimately, the trial court issued an opinion and order granting the motion for summary judgment filed on behalf of Fedorko and denying the motions for summary judgment filed on behalf of Westminster and the District. Said opinion and order also set aside the bid process and voided the agreement of sale executed between the District and Westminster. In reaching its decision, the trial court found nothing wrong with Westminster's bid, as the contingencies expressed in the bid did not require the District to make warranties or representations concerning the property.[7]

The trial court also found that the bid instructions did not preclude conditional

---

2. Such approvals/permits related to issues of a storm water management system, zoning, clear title and curb cuts.

3. Such utilities included water, sewer, gas, electricity and telephone.

4. *See* R.R. at 28a.

5. Fedorko asked the trial court to either direct the District to accept his bid or direct the District to sell the property at auction or public bid.

6. The Westminster bid provided for a closing date no later than March 31, 1999.

7. The trial court stated that "[w]hile Westminster's conditions are very broad and relate to a number of important matters such as 'clear title' and obtaining 'permits' which would allow intended development, none of them require [the District] to guarantee anything or to change the character or condition of the property." (Opinion of Trial Court at 6).

sales and that all bidders were "equally free to add conditions and concomitantly raise the bid price." (Opinion of Trial Court at 8). Further, the trial court found that "[e]verybody was presented with the same rules, and Westminster's bid followed those rules.... Therefore, the bid process was carried out in an appropriate manner, consistent with the requirements of law." (Opinion of Trial Court at 8–9).

However, the trial court indicated that this was not the end of the matter and it proceeded to examine the agreement of sale executed between the District and Westminster. The trial court noted that this agreement contained specific representations and warranties regarding the property, contrary to the resolution, notice and instructions to bidders requiring the "AS IS" sale of the property.[8] After discussing the purpose of competitive bidding and the issue of post-bid changes, the trial court concluded that the District "was willing to change the rules of the game" and, "[b]ecause of the fundamental inconsistencies between the bid instructions and the [agreement of sale], the "sealed bid' approach ... was not carried out with sufficient integrity to enhance public confidence in the manner intended." (Opinion of Trial Court at 11–12). Hence, the trial court set aside the bid process and voided the agreement of sale.

Westminster thereafter filed a motion for reconsideration requesting that the trial court amend its order to allow Westminster and the District to delete the inconsistent provisions of the agreement of sale and proceed to consummate the sale of the property. Westminster attached to its motion an affidavit from one of its partners, Toby M. Froehlich. In his affidavit, Mr. Froehlich indicated that he received a form agreement from the District containing the aforementioned representations and warranties, that no one at Westminster requested the inclusion of the same in the agreement, that Westminster would have entered into an agreement without the same and that Westminster would "today" waive these provisions. (R.R. at 354a). The trial court, however, denied Westminster's motion for reconsideration. Westminster then filed a notice of appeal with the trial court.

On appeal to this Court,[9] Westminster argues that the trial court erred as a matter of law in voiding a bid process it found to have been conducted in an entirely appropriate and legal manner and in raising issues concerning the agreement of sale sua sponte, thereby depriving the District and Westminster of legal rights without notice. Additionally, Westminster argues that the trial court abused its discretion by employing a remedy that was broader than necessary and resulted in avoidable prejudice to the District and Westminster. We disagree.

Section 707 of the Code provides three methods by which a school district can dispose of property, i.e., by public auction, by sealed bid or by private sale. Section 707(2) of the Code, 24 P.S. § 7–707(2),

---

8. Specifically, the agreement of sale contained specific warranties regarding title to the property, the lack of "any hazardous wastes or other obnoxious substances" on the property and the lack of the designation of any portion of the property "as a wetlands." (R.R. at 74a–75a).

9. Our scope of review of an order granting or denying summary judgment is limited to determining whether the trial court committed an error of law or abused its discretion. *Salerno v. LaBarr*, 159 Pa.Cmwlth. 99, 632 A.2d 1002 (1993), *petition for allowance of appeal* *denied*, 537 Pa. 655, 644 A.2d 740 (1994). An abuse of discretion exists where the judgment exercised by the lower court is manifestly unreasonable. *Borough of Downingtown v. Wagner*, 702 A.2d 593 (Pa.Cmwlth.1997), *affirmed*, 553 Pa. 452, 719 A.2d 742 (1998). Moreover, summary judgment is only appropriate when, after examining the record in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party clearly establishes that he is entitled to judgment as a matter of law. *Salerno*.

addresses the sale of school district property by sealed bid and provides, in pertinent part, that "[t]erms and conditions of the sale shall be fixed by the [school board] in the motion or resolution authorizing the request for sealed bids."

■ The law is well settled that the requirements set forth in a bidding document are mandatory and must be strictly adhered to for the bid to be valid. *See Smith v. Borough of East Stroudsburg,* 694 A.2d 19 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 549 Pa. 731, 702 A.2d 1062 (1997). Further, a contract award in a competitive bidding process must be overturned if the mandatory requirements in the bid instructions are not strictly followed. *Smith; Kimmel v. Lower Paxton Township,* 159 Pa.Cmwlth. 475, 633 A.2d 1271 (1993), *petition for allowance of appeal denied,* 538 Pa. 617, 645 A.2d 1320 (1994).

Moreover, we have previously indicated that such mandatory requirements for competitive bidding exist to invite competition and to guard against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts. *See Conduit and Foundation Corporation v. City of Philadelphia,* 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979). Recently, we expounded upon this concept, indicating that "fairness lies at the heart of the bidding process, and all bidders must be confronted with the same requirements and be given the same fair opportunity to bid in free competition with each other." *Shaeffer v. City of Lancaster,* 754 A.2d 719, 723 (Pa.Cmwlth. 2000).

■ In this case, the District's resolution, as well as the notice and instructions to bidders, specifically provided that the property was to be sold in "AS IS" condition and that the District "makes no representations as to the size of the property or the marketability of title, general conditions and terrain or any other matters affecting the property." (R.R. at 17a, 23a). Following the acceptance of Westminster's bid, the District and Westminster proceeded to execute an agreement of sale completely ignoring these requirements.

Instead, the agreement of sale included various representations and warranties regarding the character and quality of the District's title to the property, as well as environmental conditions affecting the property.[10] Furthermore, the agreement of sale provided that these representations and warranties were "a material inducement to [Westminster] to execute and perform its obligations under this Agreement." (R.R. at 73a). These representations and warranties were material deviations from the District's resolution, as well as the notice and instructions to bidders, and provided Westminster with an unfair competitive advantage over other bidders. Thus, we cannot say that the trial court erred as a matter of law or abused its discretion in voiding the agreement of sale and the entire bid process.

Nor can we say that the trial court raised issues concerning the agreement of sale sua sponte, thereby depriving the District and Westminster of legal rights without notice. In his initial complaint in equity, Fedorko noted the agreement of sale and its contradictory terms and conditions on several occasions.[11] Additionally, West-

---

**10.** Specifically, the agreement of sale provided that the District had "good, absolute, and marketable title to the real property," that it was "not in default in any respect under any contracts, agreements, leases, documents or other commitments to which [Westminster] shall be bound," that the property "does not

contain any hazardous wastes or other obnoxious substances" and that no portion of the property "has been delineated as a wetlands." (R.R. at 74a–75a).

**11.** *See* Paragraphs 21, 31 and 38 of Fedorko's complaint. (R.R. at 11a, 13a and 15a).

minster, not Fedorko, first made the trial court aware of the terms and conditions of the agreement of sale it executed with the District by offering said agreement in support of its motion for summary judgment.[12]

Accordingly, the order of the trial court is affirmed.

**12.** Fedorko did not know of the actual terms and conditions of this agreement until this time.

*O R D E R*

AND NOW, this 13th day of July, 2000, the order of the Court of Common Pleas of Erie County is hereby affirmed.