**GREATER FOURTH STREET ASSOCIATES, INC., a Pennsylvania Corporation, Appellant,**

v.

**SMITHFIELD TOWNSHIP, Smithfield Township Economic Development Corporation, a Pennsylvania nonprofit Corporation, Marshall L. Hamilton, Robert Kepner and Wayne W. Mateer, all in their capacities as su-** pervisors of Smithfield Township and members of the Smithfield Township Economic Development Corporation, Vicki Harshbarger, in her capacities as Secretary/Treasurer of Smithfield Township and as a member of the Smithfield Township Economic Development Corporation, and Jeffrey C. Shaffer, in his capacity as supervisor of Smithfield Township.

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2002.

Decided Feb. 10, 2003.

---

BEFORE: FRIEDMAN, Judge,
LEADBETTER, Judge, and
FLAHERTY, Senior Judge.

OPINION BY Judge LEADBETTER.

This appeal raises the novel issue of whether a Second Class Township will violate the competitive bidding requirement of Section 1503 of the Second Class Township Code (Code),[1] 53 P.S. § 66503, by giving property it will purchase from the Commonwealth to a private nonprofit corporation that it created, which will in turn sell the property to the developer of its choosing. The Court of Common Pleas of Huntingdon County concluded that the proposed property transfer from the township to the nonprofit corporation was legal and granted the summary judgment motion of Smithfield Township (Township), Smithfield Township Economic Development Corp. (STEDCO), and various individuals in their capacities as Township Supervisors, Officers and STEDCO members, and denied the summary judgment motion of Greater Fourth Street Associates, Inc. (Greater Fourth Street), the corporation that was interested in purchasing the same property from the Township. Greater Fourth Street's appeal is presently before this court.

The following facts are undisputed. The Commonwealth owned approximately 116 acres of prime undeveloped real estate (the property) in Smithfield Township, Huntingdon County.[2] Over the years, various entities, including the Township, Greater Fourth Street and Huntingdon County Business & Industry, Inc. (HCBI)[3] ex-

W. Thomas McGough, Jr., Pittsburgh, for appellant.

C. Kent Price, Harrisburg, for appellees.

1. Act of May 1, 1933, P.L. 103, *as amended, reenacted by* Section 1 of the Act of November 9, 1995, P.L. 350.

2. Historically, the Huntingdon State Correctional Institution used this land.

3. Both Greater Fourth Street and HCBI are Pennsylvania corporations involved in various aspects of real estate development. HCBI is a nonprofit corporation primarily involved in economic development in Huntingdon County.

pressed interest in purchasing and developing the property.[4] In 1997, the General Assembly enacted legislation (Act 66)[5] authorizing the Department of General Services (Department) to sell the property to Smithfield Township for fair market value as determined by an independent appraisal. The independent appraiser concluded that the property had a fair market value of $1,464,500.00.

In December of 1998, the Township passed a resolution to create STEDCO, a non-profit corporation, to act as the "alter ego" of the Township Supervisors. Township Supervisors served as STEDCO's Board of Directors and the Township Secretary and Solicitor served as the corporation's Secretary and Counsel. STEDCO's articles of incorporation stated that the corporation was formed for the purposes of, *inter alia:* (1) "acquisition, renovation, sale or lease of real estate" in the Township; (2) "[u]ndertaking remedial action to eliminate the physical, economic and social causes of deterioration in the Township;" and (3) "lessening the burdens of government by engaging in activities which will generate construction and restoration projects and assisting in other economic activities which create jobs, augment the local tax base and protect the public's investment in the infrastructure...." R.R. at 392a.

In February of 1999, the Township passed a resolution stating that it was in the best interest of the Township to have STEDCO purchase the property from the Commonwealth and, therefore, the Township assigned its right to purchase the property to STEDCO. Four months later, STEDCO and the Department entered into an agreement of sale for the property.[6] This agreement was terminated in July of 2000, however, when Greater Fourth Street filed an action in this court on the basis that the Department was authorized only to sell the property to the Township. At the same time, the Township and the Department entered into an agreement of sale for the property. Thereafter, the Township passed another resolution giving the property to STEDCO once it acquired the property from the Commonwealth.

In the fall of 2000, STEDCO issued a "Request for Qualifications Invitation to Bid," seeking bids for the purchase and development of the property. The minimum bid price required was $4,750,000.[7] The contract was awarded to Lawruk–Astleford. Although the record does not reflect the process used by STEDCO in soliciting bids and selecting the buyer/developer, it appears to be undisputed that this process did not meet the requirements of Section 1503. Shortly thereafter, Greater Fourth Street filed its amended complaint in equity, seeking a declaratory judgment that the Township's transfer of the property to STEDCO violated the Code and seeking to enjoin any sale of the property by the Township or STEDCO if not conducted in accordance with the competitive bidding require-

---

4. According to Greater Fourth Street, the Commonwealth was opposed to selling the property directly to a private developer.

5. The Act of December 19, 1997.

6. The agreement of sale provided that settlement should take place within 36 months of the determination of the purchase price.

7. The property was divided into 3 parcels: parcel A had a minimum bid price of $2,500,000; parcel B had a minimum bid price $1,500,000; and parcel C had a minimum bid price of $750,000.

Following the solicitation of bids, Greater Fourth Street sought to enjoin the opening of the bids. Common pleas denied that request.

ments of Section 1503(a) of the Code.[8] Following responsive pleadings and discovery, both parties moved for summary judgment. Common pleas granted the motion filed on behalf of the Township, its Supervisors, STEDCO and its members. In doing so, common pleas concluded, *inter alia*, that STEDCO was a valid entity (rather than a ruse created solely for the purpose of by-passing the competitive bid provisions of the Code) and that the Township's plan to give the property to STEDCO, which would then handle the sale and development, did not violate the Code.

In its appeal to this court, Greater Fourth Street reasserts the same arguments made to common pleas. Specifically, it argues that: (1) the Township lacks authority under the Code to create a non-profit corporation; (2) the Township's transfer of the property to STEDCO does not fall within the exception to competitive bidding set forth in the Code at Section 1503(d), 53 P.S. § 66503(d); (3) giving the property to STEDCO violates the Township's fiduciary duty to its citizens; (4) the Township's creation of STEDCO and transfer of Township owned property to it violates Article III, Section 31 of the Pennsylvania Constitution; and (5) STEDCO's failure to hold open meetings and provide Greater Fourth Street with access to records regarding the property violates the Sunshine Act[9] and what is commonly known as the Right to Know Act.[10]

Although it divides its argument into the multiple challenges described above, the primary thrust of Greater Fourth Street's arguments is the assertion that STEDCO is a sham or ruse, incorporated solely for the purpose of allowing the Township to avoid the public bidding requirements of Section 1503(a) so that it could choose a developer regardless of bid price. Indeed, the Township does not dispute that one of the purposes of creating STEDCO was to enable it to sell the property without going through the public bidding process. According to the Township, creation of STEDCO "[gave the Township] more options in selecting developers based on their qualifications and development plan rather than on price alone." Appellees' brief at 11 (citing to testimony of Township Supervisor Robert Kepner at R.R. 821a–22a).

The provisions of the Code that lie at the heart of this dispute are Sections 1502 and 1503. Section 1502 provides in pertinent part that, "The board of supervisors may purchase, acquire by gift or otherwise, hold, lease, let and convey, by sale or lease, any real and personal property it judges to be to [sic] the best interest of the township." 53 P.S. § 66502. Section 1503 provides, in turn:

> (a) No real estate owned by the township having a value in excess of fifteen hundred dollars ($1,500) may be sold except to the highest bidder after due notice by advertisement for bids or advertisement of a public auction in one newspaper or general circulation in the township.... The award of contracts shall be made only by public announcement at a regular or special meeting of the board of supervisors or at the public auction....

---

8. In June of 2001, the General Assembly amended Act 66 to provide that "The Department ... is hereby authorized and directed ... to grant, sell and convey to Smithfield Township *or its assigns* certain land situate in [Smithfield Township] ..." (emphasis added). Section 3 of the Act of June 25, 2001. Greater Fourth Street requested that the Township

assign the right to purchase the property to it but the Township rejected the offer.

9. 65 Pa.C.S. §§ 701–716.

10. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

. . . .

(c) The requirements of this section do not apply to conveyances or leases of real property by a township to any municipal corporation, the Federal Government, the Commonwealth, or any institution district, school district, municipal authority, county, public utility, volunteer fire company, nonprofit corporation engaged in community industrial development, . . . nonprofit housing corporation, nonprofit organizations providing community service or development activities or nonprofit corporation established for the preservation of historical, architectural or aesthetic sites or artifacts.

(d) When real property is sold to a nonprofit corporation organized as a public library or to a nonprofit medical service corporation, nonprofit housing corporation, volunteer fire company, volunteer ambulance service or volunteer rescue squad, the board of supervisors may elect to accept any nominal consideration for the property as it believes appropriate. Real property sold under this subsection is subject to the condition that when the property is not used for the purposes of the corporation or volunteer fire company, the property reverts to the township. . . .

53 P.S. § 66503.

■ These statutory mandates are grounded in strong public policy. The requirements of competitive bidding exist to "invite competition and to guard against favoritism, improvidence, extravagance, fraud and corruption in the award of municipal contracts." *Fedorko Properties, Inc. v. Millcreek Township Sch. Dist.*, 755 A.2d 118, 122 (Pa.Cmwlth.2000), *alloc. denied*, 565 Pa. 652, 771 A.2d 1289 (2001) [citing *Conduit and Foundation Corp. v.*

*City of Philadelphia*, 41 Pa.Cmwlth. 641, 401 A.2d 376 (1979)]. As we noted in *Shaeffer v. City of Lancaster*, 754 A.2d 719 (Pa.Cmwlth.2000),[11] "fairness lies at the heart of the bidding process, and all bidders must be . . . given the same fair opportunity to bid in free competition with each other." *Id.* at 723. It also bears mentioning that public officers, such as the supervisors, are fiduciaries and, when dealing with public property, must act with the "utmost good faith, fidelity and integrity." *Heilig Bros. v. Kohler*, 366 Pa. 72, 77–78, 76 A.2d 613, 616 (1950).

■ Thus, it is clear beyond dispute that the Township could not sell the property to a developer without complying with the statutory bid process, no matter how salutary its purposes in seeking to choose a developer based upon criteria other than price alone. The question, however, is whether the Township may, without violating the statutory mandate, give the property to STEDCO, which is not bound by the bid law.[12] The Township claims that it may do so under Section 1503(c) because STEDCO is a "nonprofit corporation engaged in community industrial development" or a nonprofit organization "providing community service or development activities." While this statement may be correct as far as it goes—certainly STEDCO's stated corporate purposes support such a characterization—it is not enough to inquire whether a piece of the transaction is valid; rather we must review the transaction as a whole. While under other circumstances the Township may well be entitled to give the property to STEDCO, we must conclude that in this instance STEDCO is serving merely as a straw party to enable the Township to avoid the requirement of sell-

**11.** *Shaeffer* involves the validity of an award of a publicly bid construction contract.

**12.** The Township makes no claim that STEDCO is a municipal authority.

ing the property through the public bidding process mandated by Section 1503. The Township's solicitor testified at the preliminary injunction hearing as follows:

The process that is anticipated to take place is as follows:. STEDCO gets proposals from potential developers. STEDCO chooses a developer to whom they would make an award of the project or a portion of the project ... STEDCO then will have a closing with that potential developer. Simultaneous there will be a closing between Smithfield Township and the Commonwealth of Pennsylvania. Smithfield Township will pay the Commonwealth of Pennsylvania 1.464 million dollars. The Commonwealth of Pennsylvania will convey the land to Smithfield Township. Smithfield Township then will convey the land simultaneously to STEDCO and the developer who's purchasing the property.

That money is the money that will pay the Commonwealth of Pennsylvania, so Smithfield Township isn't going out of pocket 1.464 million dollars and then giving the property away. Smithfield Township is getting the money to purchase the property from the developers who would develop the property. So it's really a three-part closing; Commonwealth gives the land to STEDCO, STEDCO gives it to the developer. In return the money from the developer pays the Commonwealth of Pennsylvania.

R.R. at 120–121a. See also R.R. 155–156a. He also testified that the profit from the sale of the property would be divided between the Township and HCBI. R.R. at 122a; 142a. See also the testimony of Township Supervisor Wayne Mateer, R.R. at 874a, 883a. Finally, during a discovery deposition, the solicitor later explained that if the three-way transaction did not

happen simultaneously, "then the deal won't happen because Smithfield Township doesn't have 1.464 million to pay the Commonwealth of Pennsylvania, and they don't have any money to pay the closing costs ..." R.R. at 933a. Thus, while we do not agree that STEDCO is a "ruse" or "sham," it is clear that in the context of this transaction the Township is using STEDCO as a straw party or pass through entity to convey title to a particular developer without competitive bidding. The funds the Township will use to purchase the property will come from the developer purchasing the property from STEDCO, and the Township, not STEDCO, shares in the profits derived from the sale of the property. Moreover, STEDCO's ownership of the property is momentary at best, as title is immediately transferred to the developer. Consequently, we agree that the transaction at issue violates Section 1503(a) of the Code and must be set aside.

We must so hold in spite of the fact that the motives of the Township appear to be entirely admirable, seeking nothing more than to benefit the area economically. As the solicitor testified:

And if the development is done properly it minimizes the cost to Smithfield Township in the future. If the development is done properly, it maximizes the tax base now and in the future. Future expansion will take place if this development is done right. It also maximizes job opportunities for people in Huntingdon County and brings to the people of Huntingdon County an opportunity which may not have been here now which means they may travel to Altoona, State College or Lewistown to realize.

R.R. at 124–125a. Nonetheless, such motives do not relieve the Township of its duty to follow the Code. Were we to accept the Township's interpretation of Section 1503 and allow governmental units to avoid

the competitive bid process by the use of straw parties or similar devices, we would eviscerate an important and long-standing statutory mandate. We do not believe the legislature intended such a consequence.[13]

For these reasons, the order of common pleas is reversed and the case is remanded for entry of an appropriate order consistent with this opinion.

### ORDER

AND NOW, this 10th day of February, 2003, the order of the Court of Common Pleas of Huntingdon County in the above captioned matter is hereby REVERSED and the case is REMANDED for entry of an appropriate order consistent with this opinion.

Jurisdiction relinquished.

---

**13.** As a result of this conclusion, we need not address the balance of appellant's arguments, which go further than necessary to reach the conclusion stated above, such as the claim that the Township is without authority to create a non-profit corporation at all. However, we do note that we have not found any authority in the Nonprofit Corporation Law of 1988, 15 Pa.C.S. §§ 5101—5997, or the Code, which prohibits township supervisors from filing articles of incorporation and establishing a nonprofit corporation. Indeed, other municipalities have done so. *See generally Sphere Drake Ins. Co. v. Philadelphia Gas Works*, 566 Pa. 541, 782 A.2d 510 (2001) (concluding that Philadelphia Facilities Management Corp., a nonprofit corporation formed by city officials, is a local agency for purposes of immunity from tort liability); *Lycoming County Nursing Home Ass'n v. Department of Labor and Ind., Prevailing Wage Ap-*

*peal Bd.*, 156 Pa.Cmwlth. 280, 627 A.2d 238 (1993) (concluding that Lycoming County Nursing Home Association, a private, nonprofit corporation formed by county commissioners, constituted a "public body" for purposes of payment of the prevailing wage). As these cases demonstrate, the precise quasi-governmental nature of entities so created, and the limits of their powers and obligations, is not crystal clear and will vary on a case-by-case basis.

In addition, with respect to the claims under the Sunshine and Right to Know Acts, appellant requests that these be addressed (by remand to common pleas) only "to the extent that [STEDCO] is permitted to retain any right, title or interest" in the property. Appellant's brief at 39. Since we have declared the proposed transaction to be invalid, we agree that these claims are premature and need not be reached in this appeal.