**Robert BOLUS, Sr. and Miranda Kocher, Individually and on behalf of the Committee to Save the Scranton Municipal Golf Course**

v.

**Jay SAUNDERS, City Clerk of the Council of the City of Scranton and The City Council of the City of Scranton,**

**Appeal of Robert Bolus, Sr., Individually, and on behalf of the Committee to Save the Scranton Municipal Golf Course.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 9, 2003.

Decided July 16, 2003.

Publication Ordered Oct. 6, 2003.

Robert Bolus, Sr., appellant, pro se.

Eugene F. Hickey, Carl J. Greco, Scranton, for appellees.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and MIRARCHI, Senior Judge.

SMITH–RIBNER, Judge.

Robert Bolus, Sr., individually and on behalf of the Committee to Save the Scranton Municipal Golf Course (Bolus), appeals from an order of the Court of Common Pleas of Lackawanna County denying his complaint in mandamus and his petitions for a mandatory preliminary injunction and sanctions. Bolus questions whether the trial court erred in dismissing the mandamus action based upon alleged defects in the notarization of signatures on the referendum petition and whether the city clerk was required to issue blank petition forms to the appellants.

Since 1992 the City of Scranton has been classified by the Commonwealth as a financially distressed municipality in accordance with the Municipalities Financial Recovery Act, Act of July 10, 1987, P.L. 246, *as amended*, 53 P.S. §§ 11701.101–11701.501 (commonly known as "Act 47"). In July 2002, in an effort to eliminate financial sanctions previously assessed against Scranton, the city council adopted a "Recovery Plan" intended to restore Scranton's fiscal stability. It was approved by the city electorate in November 2002. The Recovery Plan includes a clause stating that the status of the Scranton Municipal Golf Course was being evaluated and that the mayor and city council

would address the golf course's status in an expeditious manner.[1]

Pursuant to the Recovery Plan, on January 27, 2003, the city council approved Ordinance No. 118, which provided that on March 3, 2003 the golf course was to be sold at public auction. The Ordinance was adopted in accordance with Article IV, Section 405 of Scranton's Home Rule Charter, which allows the city council to dispose of a matter without giving public notice if the council by resolution declares that an emergency exists and that Scranton's peace, health, safety or convenience requires that the matter be addressed immediately. Pursuant to Article IV, Section 1 of the city's Rules of the Council, which governs the passage of ordinances or resolutions in case of public emergencies, the city council unanimously approved an emergency certificate, affirming that in regard to the sale of the golf course an emergency existed and therefore that Ordinance No. 118 had to be passed immediately.

On January 31, 2003, Bolus filed with City Clerk Jay Saunders an affidavit signed by Bolus and seven other members of the city electorate stating that in accordance with Article X, Sections 1001 and 1002 of the Home Rule Charter, the signatories intended to seek a public referendum on Ordinance No. 118 and the intended sale of the golf course.[2] Although Section 1002 of the Home Rule Charter provides that upon the filing of such an affidavit the city clerk shall issue referendum petitions, Saunders did not do so. He explained that the city was consulting with legal counsel on whether Ordinance No. 118 was subject to the referendum process. At a February 3, 2003 city council meeting, Bolus requested the city council to reverse its approval of Ordinance No. 118 and to issue the referendum petitions. The city council refused, and three days later Bolus filed a complaint in mandamus and petition for injunction, seeking to compel the city clerk to issue the petitions.

During the trial court's hearing Bolus testified about his attempts to initiate a referendum, and on cross-examination it was disclosed that seven signatories failed to sign the affidavit under oath before the indicated notary public. The court accepted into evidence the affidavit

---

1. The Recovery Plan provides:
   **Scranton Municipal Golf Course.** In prior years the City budgeted for a $200,000 contribution by the Scranton Municipal Golf Course to the City's operating budget. No amount is budgeted as a future revenue as part of the Recovery Plan because of possible bond indenture and financial constraints. At the present time the role of the Scranton Municipal Golf Course within the City's parks and recreation structure is being evaluated. Upon completion of this evaluation, the Mayor shall recommend to City Council an appropriate course of action and then execute that action in an expeditious manner.
   Answer and New Matter of the Defendants to Petitioners' Request for a Temporary, Emergency Injunction (Exhibit A, Chapter II–C Revised and Updated Recovery Plan).

2. Section 1001(2) of the Home Rule Charter provides:
   *Referendum*—The qualified voters of the city shall have the power to require reconsideration by the council of any adopted ordinance and, if the council fails to repeal an ordinance so reconsidered, to approve or reject it at a city election, provided that such power shall not extend to the budget or capital program or any emergency ordinances....
   Section 1002 provides: "Any five qualified voters may commence ... referendum proceedings by filing with the City Clerk an affidavit stating they will constitute the petitioners' committee.... Promptly after the affidavit of the petitioners' committee is filed the clerk shall issue the appropriate petition blanks to the petitioners' committee."

of Frederick Reddig, a policy manager for the Commonwealth's Department of Community and Economic Development, who affirmed that the Recovery Plan contained a provision for the evaluation and disposition of the golf course, that Scranton was required by Act 47 to implement the provisions of its Recovery Plan and that Act 47 did not allow referendums as a means of amending a municipality's recovery plan. In denying Bolus' request for injunctive relief and dismissing the mandamus complaint, the trial court first concluded that the affidavit supporting the request for referendum petitions was invalid because the signatories did not affix their signatures while under oath before the notary public. The court noted that the Recovery Plan addressed the disposition of the golf course and that it was approved by the city electorate, and in passing Ordinance No. 118 the mayor and city council were simply acting in the expeditious manner required by the Plan. The court concluded as well that Bolus had failed to prove that Ordinance No. 118 was not exempt from referendum review under Section 1001(2) of the Home Rule Charter.[3]

On appeal, Bolus first argues that the trial court abused its discretion by dismissing the mandamus action based upon the defective affidavit. (Bolus does not challenge the denial of injunctive relief.) Citing cases dealing with defective verifications under the Pennsylvania Rules of Civil Procedure, Bolus maintains that the failure to properly sign the affidavit is a technical defect and that the court should have allowed the signatories, all present in the courtroom during the hearing, to testify that they signed the affidavit in good faith. See, e.g., Monroe Contract Corp. v. Harrison Square, Inc., 266 Pa.Super. 549, 405 A.2d 954 (1979) (stating that, in regard to the contents of verifications, de minimis violations of Pa. R.C.P. No. 1024 are not jurisdictional; court confronted with a defective verification should grant leave to amend and not dismiss accompanying petition).

Scranton responds that cases regarding verification of petitions or pleadings under the Rules of Civil Procedure are irrelevant and that the defective affidavit is more akin to the unverified signatures on election-contest petitions, which have been found to be fatally flawed and therefore insufficient to invoke a court's jurisdiction. See In re Opening of Ballot Boxes, Montour County, 553 Pa. 207, 718 A.2d 774 (1998) (noting that for 80 years, under current and former election codes, a recount petition not verified in accordance with statutory requirements cannot invoke jurisdiction of courts of common pleas and must be dismissed). Scranton contends that on the specific facts presented here the Court cannot conclude that the trial court abused its discretion by rejecting the affidavit and in refusing to allow further testimony.

In actuality, seven of the eight signatories failed to sign the affidavit before the notary, a defect that cannot be characterized as merely "technical." Compare Bureau of Commissioners v. Downing, 24

---

3. A writ of mandamus may be issued only when a clear legal right exists in the plaintiff, a corresponding duty exists in the defendant and no other appropriate and adequate remedy exists. Voss v. Pennsylvania Board of Probation and Parole, 788 A.2d 1107 (Pa.Cmwlth. 2001). This Court's review of an action in mandamus is limited to determining whether the trial court abused its discretion or committed an error of law. Frisch v. Penn Township, 662 A.2d 1166 (Pa.Cmwlth.1995). On appeal from a grant or denial of a preliminary injunction, the Court determines whether there were any reasonable grounds to support the trial court's decision or whether the rule of law relied on was erroneous or misapplied. Shaeffer v. City of Lancaster, 754 A.2d 719 (Pa.Cmwlth.2000).

Pa.Cmwlth. 613, 357 A.2d 703 (Pa.Cmwlth. 1976) (practice of notaries to affix their seals to documents not signed in their presence is illegal). Having disregarded the affidavit's signature requirements, Bolus then requested the trial court to correct the defects by allowing what may have been lengthy examination and cross-examination of at least four and possibly seven additional witnesses. Although allowing such testimony may have been within the court's discretion, on these facts the court's refusal to do so does not constitute an abuse of discretion or an error of law.

■ Bolus' second argument is that City Clerk Saunders was required by law to issue the referendum petitions because the voters satisfied the requirements of Section 1002 of the Home Rule Charter, thus leaving Saunders with no discretion in whether to issue the petitions, and because Ordinance No. 118 was not excluded from the referendum process by virtue of Section 1001(2) exceptions to that process. Scranton maintains that Ordinance No. 118 is not subject to referendum review because it is excluded under the exceptions stated in Section 1001(2): first, it was passed as an "emergency ordinance," and second, the sale of the golf course is part of Scranton's "capital program." Furthermore, Act 47 does not permit referendum review of a municipality's recovery plan.

Regardless of whether Ordinance No. 118 is an "emergency ordinance" or part of a "capital program," the Court's reading of Act 47 compels the conclusion that the Act does not permit referendum review and amendment of a city's recovery plan. Act 47 authorizes the secretary of the Department of Community and Economic Devel-opment to appoint a coordinator to prepare and administer a financial plan for the municipality. In devising the plan, the coordinator may conduct public and private meetings with municipal officials and creditors in order to address various claims. Public notice and discussion of any proposed plan is required, and the coordinator and municipal officials must attend public meetings in order to consider public comment on the plan. During this process, however, neither the municipality's chief executive officer nor its governing body may independently revise the coordinator's plan, although those officials may propose amendments.[4] Depending on the form of government, Act 47 provides alternative means for adopting a recovery plan, and none contemplates a referendum process.[5] Significantly, "[a]n amendment to an adopted plan may be initiated by the coordinator, the chief executive officer or the governing body of a municipality, as the case may be. The adoption of an amendment shall be by ordinance." [6]

The Court's analysis need proceed no further. Ordinance No. 118 was adopted pursuant to a provision in Chapter II–C of Scranton's Recovery Plan (see n. 1), which granted the mayor and city council the discretion to evaluate and take action regarding the status of the golf course. The mayor and city council acted within the authority granted to them in a recovery plan lawfully adopted under Act 47. Nothing in Act 47 indicates that such actions may be subject to review by referendum authorized under a municipality's home rule charter. Consequently, even if the Court agreed with Bolus that the trial court abused its discretion in rejecting the

---

4. *See* Sections 221, 223, 242 and 244 of Act 47, 53 P.S. §§ 11701.221, 11701.223, 11701.242 and 11701.244.

5. Sections 245 and 246 of Act 47, 53 P.S. §§ 11701.245 and 11701.246.

6. Section 249 of Act 47, 53 P.S. § 11701.249.

voters' affidavit, Bolus nevertheless failed to meet his burden to demonstrate that the court otherwise abused its discretion or committed an error of law in its rulings or that he had a clear right to relief. *Frisch v. Penn Township*, 662 A.2d 1166 (Pa. Cmwlth.1995). The Court, therefore, affirms.

### ORDER

AND NOW, this 16th day of July, 2003, the order of the Court of Common Pleas of Lackawanna County is hereby affirmed.