# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Howard Schwartz | : | |
| | : | |
| v. | : | |
| Allegheny County Pennsylvania, | : | |
| and Value-Added Communications, Inc. | : | |
| | : | |
| Value-Added Communications, Inc. | : | |
| | : | |
| v. | : | No. 385 C.D. 2015 |
| | : | |
| Securus Technologies, Inc. | : | |
| and The County of Allegheny | : | |
| | : | |
| Appeal of: Howard Schwartz and | : | |
| Securus Technologies, Inc. | : | |
| | : | |
| Howard Schwartz | : | |
| | : | |
| v. | : | |
| | : | |
| Allegheny County Pennsylvania, | : | |
| and Value-Added Communications, Inc. | : | |
| | : | |
| Value-Added Communications, Inc. | : | |
| | : | |
| v. | : | No. 416 C.D. 2015 |
| | : | Argued: November 17, 2015 |
| Securus Technologies, Inc. | : | |
| and The County of Allegheny | : | |
| | : | |
| Appeal of: Securus Technologies, Inc. | : | |
| and Howard Schwartz | : | |

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                    HONORABLE ROBERT SIMPSON, Judge
                    HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: January 5, 2016**

This is the fourth time since 2006 that we have been asked to review Allegheny County's (County) award of a contract for an inmate telephone system (ITS) for the County Jail and juvenile detention facility (collectively, the Jail). Most recently, in 2014 this Court affirmed an order of the Court of Common Pleas of Allegheny County[1] (trial court) that denied Howard Schwartz's (Schwartz) motion for *preliminary* injunction through which he sought to enjoin the County's award of the contract to the successful bidder, Value-Added Communications, Inc. (VAC). Schwartz v. Allegheny Cnty. (Pa. Cmwlth., No. 1769 C.D. 2013, filed May 23, 2014), 2014 WL 2160138 (unreported), appeal denied, 104 A.3d 527 (Pa. 2014) (Schwartz I).

Thereafter, Schwartz (acting essentially on behalf of Securus Technologies, Inc. (Securus)) filed a motion for summary judgment, asserting that newly produced evidence showed that the County's Request For Proposals (RFP) was ambiguous and distorted the bidding process in favor of VAC. Thus, Schwartz sought to *permanently* enjoin the award of the County's contract to VAC and require the County to conduct a re-bid. VAC filed a cross-motion for summary judgment, asserting the County's award of the contract to VAC was valid, and Schwartz did not provide any factual support for his allegations that the bidding process was unfair. Ultimately, the trial court granted VAC's motion for summary judgment, and it denied Schwartz's motion for summary judgment.

In these consolidated appeals, Schwartz and Securus (collectively, Securus) ask whether the trial court erred in denying Schwartz's motion for

---

[1] The Honorable Christine Ward presided.

1

summary judgment and granting VAC's motion for summary judgment. Additionally, as a threshold procedural matter, VAC and the County argue that this Court should quash Securus' appeal on the ground that the trial court's order is interlocutory and, therefore, unappealable. Upon review, we affirm.

## I. Background

The extensive background to the litigation involving the County's award of the ITS contract is set forth in our decision in Schwartz I. The following brief factual background is relevant to the current dispute.

The Jail uses telephone systems installed and maintained by third party vendors to provide telephone service for inmates. The system charges inmates, their families, or other end users for each call made. The vendor operating the telephone system retains a portion of the revenue generated for itself and provides a portion to the County. The funds paid to the County are referred to as commissions.

On June 1, 2012, the County sent out an RFP for an ITS and related technology for the Jail. The County was to award the contract to the bidder whose proposal earned the highest score based on an evaluation of various criteria. The proposals were to be evaluated by an evaluation committee that would recommend a vendor. The evaluation committee consisted of County representatives and an independent consultant, none of whom served on the evaluation committees in the previous two inmate phone system proceedings. Four vendors submitted responses

2

to the RFP: ICSolutions, Inc.; CenturyLink Correctional Communications Services; VAC; and Securus.

During the bidding process, VAC and Securus had different interpretations of Sections IV(A) and (B) of the RFP. Securus interpreted those sections to mean that a vendor had to pay commissions on "all additional charges and fees" it disclosed in Appendix B.[2] Tr. Ct., Slip Op., 4/11/15, at 4. However, VAC and the County interpreted these sections to mean that a vendor only needed to pay commissions on the fees it charged without first obtaining the County's permission to charge the fee.

Using the mathematical formula set forth in the RFP, Joseph Webb, the County's independent consultant, scored the competitors' financial proposals. VAC offered the highest commission at 82% and received the highest possible financial proposal score of 250 points. Securus offered the second-highest commission of 81.1% and received the second-highest score of 247.3 points.

At the conclusion of the RFP proposal evaluation process, VAC ranked first, with a total of 651.5 points out of a possible 674, and Securus ranked second, with a total of 605.8 points. VAC was the successful bidder. The contract was awarded to VAC on October 22, 2012.

---

[2] Appendix B required vendors "to detail all additional charges and fees that will be assessed for all collect, debit and pre-paid inmate telephone calls including all set up fees and deposit fees associated with pre-paid accounts[,]" on a form to be submitted with each vendor's proposal. Reproduced Record at 42a-45a.

3

In February 2013, after the County denied Securus' bid protest, VAC filed a complaint for declaratory relief seeking to obtain a declaration that the County's award of the contract to VAC was proper. Securus, through Schwartz, filed a complaint challenging the award of the contract to VAC through which it sought preliminary and permanent injunctive relief in order to enjoin the award of the contract as well as a declaration that the award of the contract to VAC was unlawful and void. The trial court consolidated the actions. Additionally, the trial court issued a consent order prohibiting VAC from removing, replacing, de-installing, or transitioning any of Securus' ITS equipment until further order of court.

In September 2013, the trial court denied Securus' motion for preliminary injunction; Securus appealed to this Court. In May 2014, this Court affirmed the trial court's decision. See Schwartz I.

Several months later, the trial court granted VAC's motion to modify the consent order, specifying that: (1) the County and VAC were authorized to take the actions necessary to implement the Jail ITS contract; (2) the County and VAC shall begin the transition of services at the Jail; and, (3) Securus shall cooperate fully in the transition of the ITS. On the same date, Securus filed a motion for summary judgment, arguing there were no genuine issues of material fact, and Securus was entitled to a re-bid based on what it alleged was an unfair bidding process. Thereafter, VAC filed a cross-motion for summary judgment.

4

Ultimately, the trial court issued an opinion and order in which it granted VAC's motion for summary judgment and denied Securus' motion for summary judgment for four reasons. First, the trial court determined that Securus did not show that its interpretation of the language in Sections IV(A) and (B) of the RFP was reasonable and affected the outcome of the bidding process. Second, the trial court explained, Securus' ambiguity argument (that VAC's "Read and do not comply response" violated the RFP and therefore was proof of an ambiguity) lacked merit. Third, the trial court determined, this case is readily distinguishable from earlier cases in which courts ordered the bidding process to begin anew. Fourth, the trial court stated, even if it accepted Securus' argument that there was an ambiguity in the RFP, VAC still would have won the bid. Securus appealed to this Court.

The trial court ordered Securus to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which it did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a). This matter is now before us for disposition.

## II. Issues

As a threshold procedural matter, VAC and the County argue that this Court should quash Securus' appeal on the ground that the trial court's order is interlocutory and, therefore, unappealable.

As to the merits,[3] Securus asserts the trial court erred in finding the RFP was not ambiguous and in concluding that, even if the RFP was ambiguous, VAC did not receive an unfair competitive advantage.

## III. Discussion
### A. Appealability
#### 1. Contentions

Initially, VAC and the County argue this Court lacks jurisdiction over Securus' appeal. They assert Securus had no right to appeal the trial court's order as that order is interlocutory; therefore, this Court should quash Securus' appeal.

Specifically, VAC and the County contend the trial court's order granted summary judgment regarding VAC's claim for declaratory judgment, but it did not resolve VAC's claim for damages. As such, the order is interlocutory, and not appealable as of right pursuant to Pa. R.A.P. 341(a). See Bolmgren v. State Farm Fire & Cas. Co., 758 A.2d 689, 690-91 (Pa. Super. 2000). VAC and the County argue an order granting summary judgment that resolves issues related to equitable claims for declaratory judgment, but does not resolve a legal claim for damages is interlocutory and, thus, not appealable. Id.; see also Reading v. Feltman, 562 A.2d 926, 928 (Pa. Cmwlth. 1989) (citing City of Reading v. Templin, 489 A.2d 272 (Pa. Cmwlth. 1985)). Here, VAC and the County assert, VAC was granted summary judgment as to its declaratory judgment claim; however, the trial court has yet to address VAC's claim for damages, set forth in its

---

[3] Our review of a trial court order granting summary judgment is limited to determining whether the trial court erred as a matter of law or abused its discretion. Kuniskas v. Commonwealth, 977 A.2d 602 (Pa. Cmwlth. 2009).

6

complaint (and reiterated throughout its various pleadings). See Reproduced Record (R.R.) at 575a. As such, the trial court's order is not final and thus not appealable as of right. Thus, Securus' appeal is not allowable and should be quashed.

Securus counters that the trial court's order is a final order that is appealable as of right pursuant to Pa. R.A.P 341. As the Pennsylvania Supreme Court holds, pursuant to the Declaratory Judgment Act (DJA), 42 Pa. C.S. §§7532-7551, "an order in a declaratory judgment action that either affirmatively or negatively declares the rights and duties of the parties constituents a final order." Nationwide Mut. Ins Co. v. Wickett, 763 A.2d 813, 818 (Pa. 2000). If a trial court fully adjudicates the claims by ruling that there is no "conceivable legal theory" under which a party could prevail, its order final and immediately appealable. Consolidation Coal Co. v. White, 875 A.2d 318, 324, 325 (Pa. Super. 2005).

Here, Securus asserts, the trial court's order resolved the only issue presented—whether the award to VAC was legal and valid. The trial court made the following declaration in its order: "[The] County's award of the 2012 Inmate Telephone System to VAC is legal and valid." Tr. Ct., Mem. & Order, 2/19/15, at 14. Further, the trial court fully adjudicated the parties' claims by: (i) denying Securus' motion for summary judgment; and, (ii) granting VAC's motion for summary judgment. In other words, the trial court found there was no "conceivable legal theory" under which Securus could show the award to VAC was not legal and valid. Consolidation Coal. As such, Securus contends, the trial

7

court's order is a final order and immediately appealable as of right pursuant to Pa. R.A.P. 341.

Securus acknowledges the argument made by VAC and the County that the trial court's order is not a final order because the trial court did not yet address the claim for damages set forth in VAC's complaint. However, Securus asserts, this claim is absurd. It contends VAC does not have a claim for damages here. Indeed, VAC's complaint is titled "Complaint for Declaratory Judgment," R.R. at 564a, and it contains one count titled "Count I – Declaratory Judgment that VAC is Properly Awarded as the Successful Vendor of the 2012 Inmate Telephone System RFP." R.R. at 573a. Securus asserts that, although VAC and the County point to VAC's boilerplate request for attorney fees in the last sentence of the complaint's prayer for relief, this is not a pending "claim for damages." Securus argues VAC and the County point to nothing in the record where VAC ever even mentioned this boilerplate request, let alone requested the trial court award some type of damages.

Securus further contends, to the extent VAC's boilerplate language could be interpreted as a request for damages, the trial court denied that request by granting VAC's request for declaratory relief without any award of damages or fees. Additionally, it argues, the Superior Court's decision in Bolmgren, relied on by VAC and the County, does not support their position. Unlike the plaintiffs in Bolmgren, VAC only sought a declaratory judgment that it was properly awarded the 2012 ITS contract. VAC did not bring any civil claim, let alone a claim where it would remotely be entitled to damages or attorney fees. The trial court granted

8

the relief VAC requested by granting its motion for summary judgment. Securus argues VAC has no pending claim.

## 2. Analysis

Contrary to the assertions of VAC and the County, the trial court's order here is a final, appealable order. That order states: "[I]t is hereby ORDERED that [Schwartz] and [Securus'] Motion for Summary Judgment is DENIED. It is further ORDERED that [VAC's] Motion for Summary Judgment is GRANTED. <u>Allegheny County's award of the 2012 Inmate Telephone System to VAC is legal and valid</u>." Tr. Ct., Mem. & Order at 14 (emphasis added).

VAC and the County assert the trial court's order is non-final because it did not resolve VAC's claim for damages. However, our review of VAC's complaint reveals that the pleading, styled as a complaint for declaratory judgment, contains a single count, seeking a declaratory judgment that VAC was properly deemed the successful vendor of the 2012 ITS RFP. R.R. at 566a-575a. In its prayer for relief, VAC did also request "attorney fees, costs, pre-judgment and post-judgment interest and any such other and further relief as the Court deems just and proper." R.R. at 575a. The inclusion of this boilerplate language in the prayer for relief is not tantamount to a distinct claim seeking monetary damages.

To that end, pursuant to Section 7532 of the DJA:

> Courts of record, within their respective jurisdictions, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. … The declaration may be either affirmative or negative in form and effect, and <u>such declarations shall have the force and effect of a final judgment or decree</u>.

9

42 Pa. C.S. §7532 (emphasis added).

Applying this statutory provision, our Supreme Court in Wickett held that a trial court's orders that sustained preliminary objections in the nature of demurrers in actions brought under the DJA were immediately appealable where the orders affirmatively or negatively declared the legal rights of the parties. See Pa. R.A.P. 341(b)(2) (defining a "final order" as an order that is "expressly defined as final by statute").

Here, the trial court's order resolving the parties' cross-motions for summary judgment is final under Section 7532 of the DJA and Wickett because it effectively declares the legal rights of the parties in determining the County's award of the 2012 ITS contract to VAC is legal and valid. Indeed, no additional claims remain outstanding (despite the inclusion of the boilerplate language seeking fees, costs and interests in VAC's prayer for relief). To that end, in its motion for summary judgment, VAC only referenced its sole claim declaratory relief. R.R. at 352a-54a. Thus, the trial court's order was immediately appealable and is not interlocutory as VAC and the County assert.

Moreover, Bolmgren, relied on by VAC, is distinguishable. There, the Superior Court determined that a trial court's order was non-final where it resolved three counts of a four-count complaint seeking declaratory relief, but did not resolve the fourth count that sought damages. In so doing, the Superior Court explained that, generally, an order dismissing some but not all counts of a multi-count complaint is interlocutory and not appealable. Because the trial court's order in Bolmgren resolved the claim for declaratory relief but did not resolve the claim

10

for damages, the Superior Court determined the order was not final pursuant to Pa. R.A.P. 341.

Here, unlike in Bolmgren, the trial court's order did not dismiss some but not all counts of a multi-count complaint. Rather, the trial court's order resolved the single count for declaratory relief set forth in VAC's complaint by granting summary judgment on that count. Unlike in Bolmgren, no count of the complaint remains outstanding.

Also distinguishable is Feltman, a case in which this Court noted that it quashed as interlocutory a prior appeal of a trial court's order that granted summary judgment where the trial court left undetermined matters of attorney fees, costs *and punitive damages* and failed to direct a party to carry out the provisions of the order. Here, unlike in Feltman, VAC's complaint did not include a request for damages.

For these reasons, we reject the argument that the trial court's order is an interlocutory order that is unappealable.

**B. Merits**
**1. Clarity of RFP**
**a. Contentions**

As to the merits, Securus first argues, despite the undisputed facts of record (including internal emails between VAC representatives sent before the award) showing the RFP and the accompanying question and answer clarification process (Q & A) could be, and were, reasonably interpreted in two different ways,

11

the trial court found the RFP was not ambiguous because Securus' (and another bidder's, (CenturyLink)) interpretation was unreasonable. Securus contends this finding is erroneous for at least two reasons.

Securus argues the trial court never even mentioned—let alone analyzed—the undisputed record facts that show Securus, CenturyLink and VAC interpreted Sections IV(A) and (B) of the RFP and the Q & A to mean they would have to pay commissions on any fees they disclosed in Appendix B. The County, on the other hand, took the position that Sections IV(A) and (B) of the RFP meant that a vendor only needed to pay commissions on any fees that were charged without first obtaining the County's permission to charge such fees. Thus, the undisputed facts (including Q & A #9 and internal emails between VAC representatives sent before the award, neither of which were analyzed by the trial court) show the RFP, which included the Q & A, was subject to more than one reasonable interpretation and thus, was ambiguous. Securus maintains where an RFP is ambiguous, a reviewing court's "only remedy is to enjoin performance of the contract between the successful bidder and the public authority." Greenstar Pittsburgh, LLC v. Allegheny Cnty. (Pa. Cmwlth., Nos. 1890, 1970 C.D. 2012, filed January 30, 2014), 2014 WL 346613 (unreported); see also Ezy Parks v. Larson, 454 A.2d 928 (Pa. 1983).

In addition, Securus maintains the trial court erred by failing to analyze the RFP in its entirety. Indeed, despite extensive briefing and discussion of the issue of Q & A #9 at oral argument, the trial court unbelievably never even mentioned Q & A #9 in its opinion. Q &A #9 is incorporated into and is part of

the RFP. Neither VAC nor the trial court ever explained why it was unreasonable for Securus to rely on Q & A #9 in interpreting the RFP as requiring all additional fees to be commissioned. Instead of analyzing Q & A #9, the trial court simply relied on this Court's memorandum opinion in Schwartz I. However, that opinion only affirmed the trial court's denial of Schwartz's request for a preliminary injunction and, as a matter of law, is not legally relevant to whether the trial court should grant a permanent injunction.

In any event, Securus asserts, when it affirmed the trial court's denial of a preliminary injunction, this Court never decided whether Sections IV(A) and (B) and Q & A #9 were clear and unambiguous; rather, this Court only determined there were apparently reasonable grounds for the trial court to deny a preliminary injunction. In fact, Schwartz never had an opportunity to raise this issue at the preliminary injunction hearing because VAC never produced its internal emails showing that VAC adopted the same interpretation of the RFP and Q & A as Securus until after this Court issued its opinion affirming the trial court's preliminary injunction order.

VAC and the County respond that Sections IV(A) and (B) of the RFP are not subject to more than one reasonable interpretation, as the trial court correctly found and which this Court already decided in Schwartz I. Further, VAC and the County contend, even if this provision is "ambiguous"—which VAC, the record, and this Court state it is not—VAC did not receive a competitive advantage from its interpretation of these sections.

VAC and the County argue the RFP is clear on its face, and was interpreted as such by VAC, the County, the trial court, and this Court. VAC and the County maintain Securus' argument that Sections IV(A) and (B) of the RFP are ambiguous flies in the face of the fact that this Court already provided the proper interpretation of these provisions, when read in context (which Securus refuses to do). VAC and the County assert Securus' alleged "alternate" interpretation is simply not reasonable, and is merely an attempt to repackage an argument that was already definitively decided by the trial court and this Court.

VAC and the County acknowledge that, according to Pennsylvania law, if an RFP actually contains an ambiguous provision; that is, a provision capable of more than one reasonable interpretation *and* a party's interpretation of that ambiguous provision gives him a competitive advantage, the contract may be enjoined and the project rebid. Greenstar Pittsburgh; see Conduit & Foundation Corp. v. City of Phila., 401 A.2d 376 (Pa. Cmwlth. 1979). Contractual terms are ambiguous "if they are subject to more than one *reasonable* interpretation when applied to a particular set of facts." Madison Constr. Co. v. Harleysville Mut. Ins Co., 735 A.2d 100, 106 (Pa. 1999) (emphasis added); see also Commonwealth, State Highway & Bridge Auth. v. E. J. Albrecht Co., 430 A.2d 328, 330 (Pa. Cmwlth. 1981) ("A contract is ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning …. [A] contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.")

14

VAC and the County maintain it is evident that the mere fact that respondents to an RFP may have had an alternate interpretation to a certain RFP provision does not render that interpretation "reasonable" and the misinterpreted provision thereby ambiguous. For example, in Greenstar Pittsburgh, the appellant asserted three different RFP provisions were subject to more than one reasonable interpretation. Although the appellant clearly interpreted the RFP differently than the winning bidder and the County, this Court determined that, as to two of the three provisions, the appellant's alternate interpretation was not reasonable. Thus, two of the challenged provisions were not ambiguous.

Here, VAC and the County maintain Securus did not show that VAC and CenturyLink interpreted the RFP instructions incorrectly as Securus allegedly did. VAC and the County argue that Securus makes much of VAC's "internal emails" and the question submitted by CenturyLink, claiming these items provide "undisputed evidence" that VAC and CenturyLink interpreted the RFP as Securus allegedly did. Appellees' Br. at 19. First, VAC and the County argue these items do not show that VAC or CenturyLink adopted an erroneous interpretation. In addition, such a determination is irrelevant because ambiguity is determined from the face of the document and mere proof of alternate interpretations does not show such interpretations are reasonable.

VAC and the County maintain the purported "new evidence," which consists of two emails from Anthony Pellegrino, VAC's Vice President of Mid-Atlantic Sales, to Steve Montanaro, VAC's Vice President of Sales and Marketing Operations, simply does not support Securus' argument that VAC adopted

15

Securus' alleged interpretation of the RFP. Id. The only evidence regarding the correct interpretation of Pellegrino's emails comes from the deposition testimony of Montanaro and Pellegrino, both of whom clearly stated that they understood the RFP to require vendors to pay commissions on additional fees that are generated by completion of a call. See R.R. at 245a; 250a; 259a-261a. Further, regardless of Pellegrino's emails, the language of the RFP is clear as to its requirements and is not subject to other reasonable interpretations.

In addition, VAC and the County argue, claiming to have definitively determined CenturyLink's interpretation of the RFP based on the plain text of a question submitted to the County is unreasonable. Indeed, when reading the text of CenturyLink's question, it is doubtful that the question even indicates that it considered Securus' alleged alternate interpretation. Moreover, the County made clear that, whatever CenturyLink was asking, the plain language of the RFP controlled, stating: "This RFP specification remains as written." R.R. at 34a. Thus, Securus has not shown CenturyLink and VAC interpreted the RFP as Securus alleges it did.

In any event, VAC and the County contend, such a showing is irrelevant to the initial determination of whether an RFP is ambiguous. The issue of whether a provision is ambiguous is an initial legal determination made by reference to the face of the instrument itself. Steuart v. McChesney, 444 A.2d 659, 661-62 (Pa. 1982). It is after the court makes this initial determination of ambiguity that extrinsic or parol evidence as to the intent of the parties may be considered. Id. Thus, in its determination of whether the RFP was ambiguous, a

16

court need only consult the actual language of the RFP itself, without regard to the extrinsic evidence of alleged interpretations by the parties responding to the RFP.

In addition, VAC and the County argue, the trial court properly held that Securus' alleged alternate interpretation of the RFP instructions is not reasonable, and the provisions are, in fact, clear when read in context. VAC and the County assert that while Securus attempts to show with very tenuous arguments that Sections IV(A) and (B) were in fact interpreted in more than one way by various respondents to the RFP, it fails to show its alleged alternate interpretation is reasonable. Securus, in fact, cannot make such a showing in this case, as the issue was already addressed by this Court in resolving Securus' prior appeal. See Schwartz I.

VAC and the County contend, as they previously argued, and as the trial court and this Court accepted in Schwartz I, the provisions regarding the definition of gross revenue and commissionable fees are not ambiguous when the RFP is read in context. This Court, in Securus' prior appeal, already directly decided, as a matter of law, the issue of the clarity of Sections IV(A) and (B). Thus, this Court already decided the proper interpretation of these provisions and held Securus' interpretation was incorrect. As such, according to the law of the case doctrine, not only is this Court's prior determination "legally relevant" to the present appeal, but the trial court was correct to rely on this Court's determination. Appellees' Br. at 22.

Finally, VAC and the County assert the actual language of the RFP's definition of "Gross Revenues" states: "Gross Revenue includes, but is not limited to, all Local, IntraLATA/Intrastate, InterLATA/Intrastate, InterLATA/Interstate, and International revenues and any and all additional charges and *fees generated by completion of all collect debit and pre-paid calls* from Vendor's inmate telephones." R.R. at 31a (emphasis added). Michael Hamann, Securus' account manager, testified in his deposition that the term "completed call" has a particular meaning in the ITS industry, namely "a call that is connected between the inmate and the called party." R.R. at 703a. Thus, any interpretation of the RFP stating that *all* fees are commissionable, regardless of whether they are generated by completion of a call, is simply unreasonable and contrary to the RFP's plain language.

### b. Analysis

In Greenstar Pittsburgh, this Court recently set forth the following overarching principles:

> Legislative and municipal regulations requiring competitive bidding of public contracts are intended to secure for the public 'the benefit and advantage of fair and just competition between bidders, and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms.' Mazet v. Pittsburgh, [20 A. 693, 697 (Pa. 1890)]; see also Yohe v. City of Lower Burrell, [208 A.2d 847, 850 (Pa. 1965)]; Louchheim et al. v. City of Philadelphia et al., [66 A. 1121, 1122 (Pa. 1907)]. In furtherance of this principle, our Supreme Court has held that, '[t]he expression, 'lowest bidder,' necessarily implies a common standard by which to measure the respective bids, and that common standard must necessarily be previously prepared specifications of the work to be done, and materials to be furnished, etc., specifications freely accessible to all who may desire to compete for the contract, and upon which alone their respective bids must be based.'

18

Mazet, [20 A. at 698]; see also Page v. King, [131 A. 707, 708-709 (Pa. 1926)]; [Conduit]. The necessity of a common standard to secure a fair and just competitive process and to guard against favoritism and fraud has led to the well-settled law of this Commonwealth that 'requirements set forth in a bidding document are mandatory and must be strictly adhered to for the bid to be valid.' Fedorko Properties, Inc. v. Millcreek Township School District, 755 A.2d 118, 122 (Pa. Cmwlth. 2000); see also Jay Township Authority v. Cummins, 773 A.2d 828, 832 (Pa. Cmwlth. 2001); Kimmel v. Lower Paxton Township, 633 A.2d 1271, 1276 (Pa. Cmwlth. 1993).

Our Supreme Court has also recognized that the common standard required to ensure free and fair competition among bidders extends to the form as well as the substance of an invitation to bid for a public contract. In Guthrie v. Armstrong, [154 A. 33 (Pa. 1931)], the Court concluded that: 'The form of the contract is often as vital as anything involved in the transaction, and, unless bidders are on an equality as to knowledge of its proposed provisions, there may be a great advantage to a bidder who has a certain understanding with which the public authorities may agree, over a bidder whose understanding is otherwise.' [Id. at 35]. Where a public authority has issued an invitation to bid with provisions subject to more than one reasonable interpretation, while the authority may not have acted in bad faith, the effect may be the same: the common standard is eroded and the public authority can no longer ensure that the public has gained the benefit of fair and just competition among bidders. See Page [131 A. at 708-709] ("[I]f bidders are misled by anything which the [public authorities] may have done, or the notice may have required, the bidding was not on a common basis; the lowest figure submitted would not, in law, be the lowest bid, because it lacked fair competition."). As with an ambiguous contract provision, if a provision in bidding specifications is subject to more than one reasonable interpretation, the ambiguous provision must be interpreted against the drafter. Jay Township Authority, 773 A.2d at 828 & n. 3.

If a provision in bidding specifications denies the public the benefit of a fair and just competitive process by which the public authority can select the lowest responsible responsive bidder due to its ambiguity, the only remedy is to enjoin

19

performance of the contract between the successful bidder and the public authority. <u>Weber v. City of Philadelphia</u>, [262 A.2d 297, 301, 302 (Pa. 1970)] ('In passing upon the propriety of the actions of municipal officials, judicial restraint rather than judicial intervention should guide the courts.'); <u>Conduit</u>, 401 A.2d at 380 ('Absent evidence of fraud or collusion, our courts have consistently upheld the rejection of all bids and readvertisement for new bids by public officials in the exercise of their informed discretion to decide that it is in the best interest of the public to do so.')

<u>Greenstar Pittsburgh</u>, slip op. at 3-5, 2014 WL 346613 at *1-*2.

An ambiguity exists where language is subject to two or more reasonable interpretations and not merely because two conflicting interpretations may be suggested. <u>Adams Outdoor Adver., L.P. v. Zoning Hearing Bd. of Smithfield Twp.</u>, 909 A.2d 469 (Pa. Cmwlth. 2006). Further, "[w]here the terms of a contract are clearly expressed, interpretation of those terms must be determined from the language itself." <u>Dep't of Transp. v. Brozzetti</u>, 684 A.2d 658, 663 (Pa. Cmwlth. 1996). Only where the language in a written contract is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties. <u>Id.</u> Whether a contract is ambiguous is a question of law fully reviewable by this Court. <u>Id.</u> A contract will be found ambiguous:

> If, and only if, it is reasonably or fairly susceptible to different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.

20

Id.  Additionally, the ambiguity must appear on the face of the agreement and not be created by the parol evidence which is offered.  Id.

At issue here are Sections IV(A) and (B) of the RFP, which state:

IV. Compensation

A. Vendor shall pay commissions calculated on all Gross Revenues generated by and through the ITS [(Inmate Telephone System)] including collect, debit and pre-paid inmate calls placed from the inmate telephone equipment located at the Facilities.  Gross revenues are generated by completed calls (see description of a completed call). Any additional fees to be added to the called party's bill or paid by the called party (including those associated with establishing/funding pre-paid collect accounts) for inmate telephone calls from the Facilities must be approved by the [County] *prior to implementation*.  Any charges/fees added to the called party's bill without the express written consent of [the] County shall carry a fine of five hundred dollars ($500.00) per day from the date the additional charges/fees were first added through the date the charges/fees were discontinued.  Additionally, Vendor shall refund each called party for the unapproved charges/fees from the date the charges/fees were implemented until the date the charges/fees were discontinued.  The additional fees/charges will be commissioned at the proposed commission rate and shall follow Section VII — Commission Payment and Reporting.

B. Gross Revenue includes, but is not limited to, all Local, IntraLATA/Intrastate,    InterLATA/Intrastate, InterLATA/Interstate, and International revenues and any and all additional charges and fees generated by completion of all collect, debit, and pre-paid calls from Vendor's inmate telephones.

21

R.R. at 205a (underlined emphasis added). Additionally, Q & A #9, referenced by

Securus, states:

> 9. Page 17 – Section IV – A, B ( & Appendix B) 'Additional fees will be commissioned at the proposed commission rate …' Prepaid collect funding fees are assessed on a per-transaction rather than a per-call basis, and cannot be specifically attributed to [the] County because called parties receive calls from multiple facilities. As a result, to our knowledge all providers exclude them from gross revenue in monthly reporting.
>
>> a) Would the County eliminate this requirement, and in its place require all vendors to separately disclose all charges and policies in their initial bids, then set them as fixed in a Best and Final Offer? This would provide the best opportunity for a more 'apples to apples' comparison.
>>
>> This REP specification remains as written. For the identification of additional fees associated with the proposed ITS billing, please refer to the additional table provided in Appendix B.

R.R. at 209a (emphasis added).

In rejecting Securus' argument that Sections IV(A) and (B) of the

RFP were ambiguous, the trial court explained:

> Here, Securus alleges that Sections IV(A) and (B) of the RFP are ambiguous. Section IV(A) requires that the 'vendor shall pay commissions calculated on all Gross Revenues …' and that 'all additional fees /charges will be commissioned at the proposed commission rate.' Section IV(B) defines 'Gross Revenue' on which commissions were to be paid to include 'any additional charges and fees.'
>
> Securus interpreted this language to mean that a vendor had to pay commissions on 'all additional charges and fees' it

22

disclosed on Appendix B. [Securus'] Brief in Support of Motion for Summary Judgment … at 6. But [the] County and VAC interpreted these sections to mean that a vendor only needed to pay commissions on the fees that it charged without first obtaining the County's permission to charge the fee.

<u>Securus has failed to show either that [its] interpretation of the language in question was reasonable or that the alleged ambiguity conferred an unfair advantage on VAC</u>. The Commonwealth Court addressed both of these issues in [Schwartz I], and ruled squarely in favor of VAC. <u>First, the Commonwealth Court held that the language in Sections IV(A) and (B) of the RFP clearly favored VAC's interpretation: '[W]hen read in context, the "additional fees /charges" referred to in the last sentence relate to the penalties for unapproved fees and charges set forth in the preceding two sentences</u>.' [Schwartz I, slip op. at 26, 2014 WL 2160138 at *13]. <u>Second, the Commonwealth Court held that the bidding process was conducted fairly</u>. <u>See</u> [Schwartz I, slip op. at 25, 2014 WL 2160138 at *13] (explaining that 'no matter how many additional charges or fees were identified by a vendor, there would be no difference in the County's scoring of the vendors' financial offers under the terms of the RFP.').

This court therefore rejects [Securus'] ambiguity argument.

Tr. Ct., Slip Op. at 7-8 (emphasis added). No error is apparent in the trial court's determination that Sections IV(A) and (B) of the RFP are not ambiguous.

More specifically, while Securus contends that both it and other vendors who responded to the RFP interpreted Sections IV(A) and (B) and Q & A #9 to mean that it had to pay commissions on "all additional charges and fees" they disclosed in Appendix B so that Securus had to factor this cost into the commission percentage it offered, in Schwartz I, this Court explained:

23

[C]ontrary to Schwartz's assertions, there is no indication that the County's evaluation was not an 'apples-to-apples' comparison. Schwartz maintains that all other vendors were of the belief that they were required to pay the County commissions on the fees and charges beyond those generated by completed calls, but the record belies this contention.

Each vendor was given the same opportunity to propose a percentage commission based on the 'per minute calling rates' and 'surcharges' set by the County. Also, in a separate table, each vendor was given the right to identify any 'additional charges and fees' that it requested that the County approve prior to implementation. The County notified each vendor that the evaluation committee would not evaluate these 'additional fees or charges' in its consideration of the bids received. Thus, all of the vendors' proposals were evaluated on the commission percentage the County would receive based on the applicable per minute calling rates and surcharges, and not based on any additional fees or charges. Indeed, the RFP made clear that each vendor's financial proposal would be scored solely on the vendor's proposed commission rate, which was based on the applicable calling rates and surcharges set by the County for collect, pre-paid collect and debit or inmate based pre-paid calls.

Consistent with this evidence (and contrary to Schwartz' assertions), Michael Hamann, *Securus'* account manager, testified it was clear the County would score the vendors' proposals on their proposed commission offers only. Further, he agreed that no matter how many additional charges or fees were identified by a vendor, there would be no difference in the County's scoring of the vendors' financial offers under the terms of the RFP.

Nevertheless, as further support for his argument that the commission payable to the County included charges and fees, Schwartz points to the final sentence of Section IV(A) of the RFP. That Section states, in relevant part:

Any additional fees to be added to the called party's bill or paid by the called party (including those associated with establishing/funding pre-paid collect accounts) for inmate telephone calls from the Facilities must be

24

approved by the [sic] Allegheny County prior to implementation. Any charges/fees added to the called party's bill without the express written consent of Allegheny County shall carry a fine of five hundred dollars ($500.00) per day from the date the additional charges/fees were first added through the date the charges/fees were discontinued. Additionally, Vendor shall refund each called party for the unapproved charges/fees from the date the charges/fees were implemented until the date the charges/fees were discontinued. *The additional fees/charges will be commissioned at the proposed commission rate and shall follow Section VII — Commission Payment and Reporting.*

Schwartz asserts the last sentence of this provision indicates that vendors were also required to pay commissions on fees and charges (in addition to the revenue generated by completed calls).

Contrary to this assertion, when read in context, the 'additional fees/charges' referred to in the last sentence relate to the penalties for unapproved fees and charges set forth in the two preceding sentences. … This interpretation is bolstered by [the testimony of Joseph M. Webb, the independent consultant selected by the County to assist in preparation of the RFP and evaluation of vendor proposals, and a member of the evaluation committee]. Webb explained: 'We told [the vendors] that they weren't allowed to charge fees without approval of the [C]ounty, and then we told them if they did charge fees that there would be a punishment which was basically a fine, the refund of fees and the bringing of a commission to the [C]ounty on the fees they charged they hadn't been approved.'

Schwartz I, slip op. at 24-26, 2014 WL 2160138 at *13-*14 (record citations omitted) (underlined emphasis added).

Thus, in Schwartz I, we essentially rejected the argument that Securus presents here. In short, as the trial court determined here, the challenged RFP

25

specifications are not subject to two reasonable interpretations, and an ambiguity does not exist simply because Securus suggests a conflicting interpretation.

To that end, Greenstar Pittsburgh, relied on by Securus is distinguishable. There, this Court affirmed a trial court decision that enjoined the award of a contract for the processing of recyclable materials where one of the bid specifications stated: "The Contractor's facility shall be located within a fifteen (15) mile radius from the City's Department of Public Works … located at 30th and A.V.R.R." Id., slip op. at 7, 2014 WL 346613 at *4 (emphasis added). Specifically, we determined that the term "facility" was ambiguous where it could reasonably be understood to denote either "other receiving site" or a contractor's "processing facility," both of which were referenced throughout the bid specifications. Id., slip op. at 8, 9, 2014 WL 346613 at *4. In short, because the term "facility" was susceptible to different meanings, both of which were reasonable, we determined the specification was ambiguous on its face. Moreover, we stated:

> [T]he fact that [the disappointed bidder] was the only contractor to operate a facility within the fifteen mile radius only buttresses our conclusion that the ambiguous language in [the bid specification at issue] failed to encourage participation and to ensure free and fair competition among bidders. We are left to speculate how many potential bidders failed to participate in the bidding process because they did not have the interpretation shared by the [successful bidder] and [the contracting authority] and instead shared the same reasonable interpretation of [the bid specification at issue] made by [the disappointed bidder].

Id., slip op. at 10, 2014 WL 346613 at *5.

26

Unlike in <u>Greenstar Pittsburgh</u>, the bid specifications at issue here did not utilize an ambiguous term that was susceptible to two different meanings, both of which were reasonable, based on the terms used throughout the bid specifications. Rather, in the case there is only one reasonable interpretation of the challenged specifications. The mere fact that Securus suggests a different interpretation does not render the specifications ambiguous.

In addition, as we explained in <u>Schwartz I</u>, also distinguishable are <u>Conduit</u> and <u>Shaeffer v. City of Lancaster</u>, 754 A.2d 719 (Pa. Cmwlth. 2000). In particular, unlike <u>Shaeffer</u>[4] and <u>Conduit</u>,[5] this is not a case in which the successful

---

[4] In <u>Shaeffer v. City of Lancaster</u>, 754 A.2d 719 (Pa. Cmwlth. 2000), we enjoined the award of a publicly bid contract to a bidder who violated bid specifications by offering the city a $1,200 "contract credit" that would effectively reduce its total bid and render it the lowest bidder. <u>Id.</u> at 721. We explained the successful bidder's inclusion of such a credit, which was not permitted by the bid specifications, conferred upon it an express competitive advantage over other bidders. This Court stated, "[o]nly if the [s]pecifications permitted the use of contract credits would the bidding have been fair and on a common basis." <u>Id.</u> at 723.

[5] In <u>Conduit & Foundation Corp. v. City of Philadelphia</u>, 401 A.2d 376 (Pa. Cmwlth. 1979) (<u>en banc</u>), we enjoined the award of a publicly bidded construction contract where the lowest bidder listed alternative suppliers for the project's components, while all other bidders listed a single supplier for each component. After the bids were opened, the city contacted the successful bidder and allowed it to designate specific suppliers for the project's components. Determining the successful bidder received an unfair advantage, this Court held:

> The most reasonable interpretation [of the bid instructions] seemed to be that only one [supplier] listing would be permitted, and that was in fact how all the other bidders understood the instruction. The notice at best left room for an unfair advantage to be taken by a bidder. …

> Because the city's specifications have led the bidders to believe that only one listing would be permitted, and the city then accepted the low bid from the only bidder who made alternative listings, we believe that the case falls, by analogy, under the line of cases raising the issue, not as to the city's discretion, but as to whether a bidder had a competitive advantage in preparing his bid because of the city's incomplete or

**(Footnote continued on next page…)**

bidder unlawfully deviated from the bid specifications by availing itself of a purported ambiguity in the bid instructions and receiving a resultant unfair advantage. Rather, VAC, the successful bidder here, utilized the process expressly contemplated by the RFP in submitting a compliant bid. See Schwartz I.

In addition, while Securus points out that the trial court did not specifically address Q & A #9, excerpted above, in its answer to the question posed regarding Sections IV (A) and (B) of the RFP, the County expressly stated: "This REP specification remains as written. For the identification of additional fees associated with the proposed ITS billing, please refer to the additional table provided in Appendix B." R.R. at 209a (emphasis added). Thus, the County declined to alter or expound on the meaning of the express language of the RFP specifications through the Q & A.

Finally, Securus asserts that "newly discovered" emails from VAC's representatives Pellegrino, VAC's Vice President of Mid-Atlantic Sales, and Montanaro, VAC's Vice President of Sales and Marketing Operations, show that VAC interpreted Sections IV(A) and (B) of the RFP in a manner similar to Securus and other vendors. See R.R. at 90-94. We reject this argument.

---

**(continued…)**

> misleading bid specifications or the city's having negotiated after the formal bid-opening[.]
> Therefore, we agree that [the successful bidder's] multiple listing of subcontractors deprived this bidding of the statutory requisite of open competition, and was thus not such an irregularity as could be waived in the city's discretion.

Id. at 379-80 (citations omitted).

28

In particular, our review of the emails reveals that VAC indicated it needed to file an exception to Sections IV (A) and (B) of the RFP in order to clarify its understanding that commissions were not due on fees. R.R. at 94a. As we explained in Schwartz I, the express terms of the RFP permitted vendors to file exceptions through the use of an exceptions addendum, which VAC did with regard to Sections IV (A) and (B) of the RFP. Id., slip op. at 19, 2014 WL 2160138 at *10. In Schwartz I, we stated that Joseph Webb, the County's independent consultant, reviewed VAC's exceptions addendum and explained that it merely reiterated the terms of Sections (IV) and (B) of the RFP and, therefore, the County did not consider VAC's bid as non-compliant with the terms of the RFP. Id., slip op. at 22-23, 2014 WL 2160138 at *11-12.

Further, in his deposition testimony Pellegrino explained that, in formulating its response to the RFP, VAC merely sought to clarify its understanding of Sections IV (A) and (B) because the County's third-party auditing firm will, at times, dispute whether certain fees are contained within the definition of "gross revenue," and, therefore are commissionable fees. R.R. at 247a. Pellegrino's testimony was consistent with that of Montanaro regarding VAC's need for clarification concerning fees on which commission is paid in anticipation of an audit by the County's third-party auditing firm. R.R. at 263a-64a. We specifically discussed Montanaro's testimony on this point in Schwartz I, see slip op. at 24, 2014 WL 2160138 at *12. For these reasons, we reject Securus' assertions that the emails from VAC's representatives show that VAC interpreted Sections IV(A) and (B) of the RFP in a manner similar to Securus and other vendors.

## 2. Competitive Advantage
### a. Contentions

Securus next points out that the trial court also found that, even if the RFP was ambiguous, VAC did not receive an unfair competitive advantage. Securus contends this finding is erroneous for at least two reasons. First, Pennsylvania law makes clear that a court need not find an unfair competitive advantage to enjoin an award issued pursuant to an ambiguous RFP. See Greenstar Pittsburgh. As Greenstar Pittsburgh and other cases show, as a matter of law, an ambiguous RFP prevents the RFP process from being fair, open and performed on a competitive basis. As such, when an RFP is ambiguous, there is no legal requirement to show an unfair competitive advantage. A trial court's only option is to enjoin the award. Id.; Shaeffer; Conduit.

In any event, Securus argues, the record shows VAC did receive an unfair competitive advantage as a result of the RFP's ambiguity. VAC's failure to agree to pay commissions on the fees it disclosed on Appendix B provided VAC with an unfair financial advantage that no other offeror received. VAC—unlike the other offerors that were agreeing to pay commissions on the fees they disclosed in Appendix B—would have incurred less costs to account for than the other vendors and, therefore, could offer a higher commission rate.

Securus contends the commission offerings were extremely close— VAC offered a commission rate that was 0.9% higher than the commission rate offered by Securus. R.R. at 447a. VAC admitted it was not agreeing to pay commissions on the fees it disclosed on Appendix B. R.R. at 76a-78a; 87a-88a. Securus and Century Link, on the other hand, were agreeing to pay commissions

on the fees disclosed on Appendix B. R.R. at 57a. If Securus knew it did not have to pay commissions on the fees it disclosed in Appendix B it would not have had to compensate for paying commissions on fees, and it could have provided the County with a higher commission rate than VAC. Securus argues the RFP ambiguity, therefore, provided VAC with an unfair financial advantage that no other offeror received.

VAC and the County respond that Securus failed to show any competitive advantage that VAC gained, and Securus refuses to acknowledge the fact that, based on the undisputed scores in the other scoring categories, VAC would have won the Jail ITS bid, regardless of the commission percentages offered by VAC and Securus.

VAC and the County assert, although Securus disputes that it needed to show VAC received a competitive advantage, the cases Securus relies on all involve instances where the alleged issue with the RFP process affected the outcome of the bid.

VAC and the County contend that, while Securus attempts to liken the facts of this case to those in Shaeffer and Conduit, such an analogy fails, as already noted by the trial court and this Court in Schwartz I. To that end, VAC and the County assert, unlike in those cases, VAC did not "win" the bidding process based on the parties' understanding of Sections IV(A) and (B) of the RFP. The Jail ITS contract was not awarded to the party offering the highest commission rate to the County. Rather, the RFP responses were scored on a number of different

31

categories.  See R.R. at 359a-362a; 306a-312a.  Thus, while Securus was awarded just 2.7 fewer points than VAC for its financial offering (the only scoring category affected by Sections IV(A) and (B)), Securus lost the overall bid by 45.7 points. R.R. at 306a.  Therefore, even if Securus offered a commission rate as high as or higher than VAC's offering, VAC would still have won the bid based on the points it earned in the other categories.  See id.  As a result, VAC and the County argue, Securus' claim that VAC received an unfair competitive advantage is simply untrue.

## b. Analysis

Securus' assertions on this point hinge entirely on the success of its argument that Sections IV(A) and (B) of the RFP are ambiguous.  For the reasons set forth above, however, we agree with the trial court that Sections IV(A) and (B) are not ambiguous.

Moreover, as the trial court explained:

> Even if this court were to hold that the language of Sections IV(A) and (B) was ambiguous and that [Securus'] interpretation of this language were reasonable, VAC would still have emerged victorious because it won by 45 points, and Sections IV(A) and (B) only involve a dispute over [2.7] of those points. …

> Sections IV(A) and (B) only pertained to the Financial Proposal section of the bidding process, which VAC won by a margin of 2.7 points over Securus.  Even if Securus were awarded those 2.7 points, it would still have lost the bid to VAC because VAC scored a total of 651.5 points to [Securus'] 605.8.  No matter how one analyzes the Financial Proposal scores, they would not have affected the overall score.

32

Tr. Ct., Slip Op. at 11-12.  Our review of the record confirms the trial court's determination.  R.R. at 306a.  Moreover, Securus offers no direct response to the trial court's analysis.

Based on the foregoing, we affirm.

_____
ROBERT SIMPSON, Judge

Judge McCullough did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Howard Schwartz                                    :
                                                   :
                    v.                             :
                                                   :
Allegheny County Pennsylvania,                     :
and Value-Added Communications, Inc.               :
                                                   :
Value-Added Communications, Inc.                   :
                                                   :
                    v.                             :   No. 385 C.D. 2015
                                                   :
Securus Technologies, Inc.                         :
and The County of Allegheny                        :
                                                   :
Appeal of: Howard Schwartz and                     :
Securus Technologies, Inc.                         :
                                                   :
Howard Schwartz                                    :
                                                   :
                    v.                             :
                                                   :
Allegheny County Pennsylvania,                     :
and Value-Added Communications, Inc.               :
                                                   :
Value-Added Communications, Inc.                   :
                                                   :
                    v.                             :   No. 416 C.D. 2015
                                                   :   Argued: November 17, 2015
Securus Technologies, Inc.                         :
and The County of Allegheny                        :
                                                   :
Appeal of: Securus Technologies, Inc.              :
and Howard Schwartz                                :

## **O R D E R**

**AND NOW**, this 5th day of January, 2016, the order of the Court of
Common Pleas of Allegheny County is **AFFIRMED**.

_____
ROBERT SIMPSON, Judge